595 A.2d 59

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Ricky Lee BURKHOLDER and Harvey L. Burkholder, Appellees.**

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided Aug. 14, 1991.

Shawn C. Wagner, Asst. Dist. Atty., for appellant.

Arthur McDermott, Carlisle, for appellee.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

Appellant, the Commonwealth of Pennsylvania, appeals from the order of the Superior Court vacating the judgments of sentence imposed upon appellees, Ricky Lee Burkholder and Harvey L. Burkholder, by the Court of Common Pleas of Cumberland County (Hess, J.).

The facts of this case as found by the trial court are as follows. On December 14, 1987, the first day of doe hunting season, Kathy and Bruce Davis observed appellee Harvey L. Burkholder get out of his pickup truck with a shotgun and shoot three times across a public roadway at three deer running in a field on the other side of the road.[1]

---

1. It is a violation of the Game and Wildlife Code to shoot on or across a public highway. Act of July 8, 1986, P.L. 442, No. 93, § 1 provides in pertinent part as follows:

§ 2504. Shooting on or across highways. (a) General rule.—It is unlawful for any person to shoot at any game or wildlife while it is on a public highway or on a highway open to use or used by the public or to shoot across a public highway or a highway or roadway open to use or used by the public unless the line of fire is high enough above the elevation of the highway to preclude any danger to the users of the highway. It shall be unlawful for any person,

The third shot hit one of the deer in the shoulder, causing it to fall. The deer, however, regained its footing and attempted to run away. Harvey L. Burkholder then fired two more shots at the deer, connecting with the second shot. Burkholder and Kathy Davis then proceeded, separately, to the site where the deer had fallen the second time. At the site, she engaged in a conversation with Burkholder. Burkholder told Ms. Davis that he had already killed a deer earlier in the day.[2] He then proceeded to slit the deer's throat. After the deer's throat was slit, Burkholder's son, appellee Ricky Lee Burkholder, arrived on the scene. With the father's consent, the son then gutted the deer. The deer, without being tagged as statutorily required,[3] was then dragged to and loaded on the father's pickup truck.

Later in the day, the Davises, who were familiar with hunting regulations, reported their observations to James Binder, a Pennsylvania Game Commission Wildlife Conservation Officer. The next day the officer, during the course of his duties, happened upon Harvey Burkholder and questioned him about the allegations made by the Davises.

after alighting from a motor vehicle being driven on or stopped on or along a public highway or road open to public travel, to shoot at any wild bird or wild animal while the person doing the shooting is within 25 yards of the traveled portion of the public highway or road open to public travel.
34 Pa.C.S. § 2504.

**2.** Although Burkholder was not charged with exceeding any prescribed kill limits (*See* 34 Pa.C.S. § 2328), the prosecution's implied theory of the case was that some of Burkholder's actions, and subsequent explanations in court, were intended to avoid exposing himself to a charge of exceeding prescribed kill limits.

**3.** Act of July 8, 1986, P.L. 442, No. 93, § 1 provides, in pertinent part, as follows:
§ 2323. Tagging and reporting big game kills. (a) Tags issued with licenses.—
(1) Each licensed person who kills any big game shall, immediately after the killing and before removing the big game from the location of the killing, fully complete the proper game kill tag in compliance with the instructions printed on the tag and attach only the game kill tag to the big game. The attached game kill tag shall remain on the big game until such time as the big game is processed for consumption or prepared for mounting.
34 Pa.C.S. § 2323.

Burkholder advised the officer that his son Ricky had shot the deer in question and properly tagged it at the scene. Burkholder completely denied the version of the facts relayed by the Davises.[4] Later in the day, Officer Binder interviewed Ricky Burkholder, whose account of the facts "more or less matched that of his father's." *See* N.T. at 55. The following day, December 16, 1987, Officer Binder inspected the roadway area where the Davises reported the shooting had taken place. At the scene, he recovered one empty 30–06 Remington–Peters cartridge case. Earlier in the day, another gaming officer, Gerald C. Magee, investigating the incident, had found a matching 30–06 empty cartridge case.

For undisclosed reasons, no further action was taken on the case until January 29, 1988, six weeks after the cartridges were found. On that date, the gaming officers sought and obtained a search warrant for Harvey Burkholder's residence; the described objects of the search were any 30–06 weapons or cartridges. The warrant was executed the next morning at 8:35 A.M. A number of weapons and cartridges were seized, all of which were returned to Burkholder except one 30–06 rifle which was later tested and determined to be the rifle from which the two spent cartridges found in the roadway area had been fired. Both appellees were subsequently arrested and charged with various violations of the Game and Wildlife Code.[5] Appel-

---

**4.** Throughout the trial, the appellees, who both testified, maintained that the father had not shot across the road, the son actually shot and tagged the deer and the father only helped in finishing off the deer after it had been injured. The trial court flatly rejected appellees' testimony, holding that the case turned on the credibility of the witnesses and "[I]n that regard, not only have I no reasonable doubt, I am satisfied the Commonwealth has made out its case beyond a reasonable doubt—beyond a shadow of a doubt." *See* Notes of Testimony at 212.

**5.** Harvey Burkholder was charged with violating: 34 Pa.S.C. § 2323(a)(1), tagging and reporting big game kills; § 2307(a), unlawful taking or possession of game or wildlife; § 2504(a), shooting on or across highways; and § 2308(a)(7), unlawful devices and methods. Ricky Lee Burkholder was charged with violating: § 2323(a), tagging and reporting big game kills; and § 2307(a), unlawful taking or possession of game or wildlife.

lees filed a pre-trial suppression motion contesting the scope of the execution of the search warrant.[6] It should be noted that the only evidence obtained during the search which was in any way referred to during the trial was the 30–06 rifle seized at Harvey Burkholder's house. The Commonwealth had this rifle analyzed, and introduced a lab report demonstrating that the cartridges found by the gaming officer two days after the incident were fired from this gun. The trial court, after hearing all the testimony in the case, denied the suppression motion and both appellees were found guilty of all charges. A month later, the court sentenced appellees to pay the costs of prosecution and imposed fines totalling $1,100.00 against Harvey Burkholder and $600.00 against Ricky Burkholder.

On appeal, a panel of Superior Court Judges (Brosky, Beck and Hoffman, JJ., Beck, J. dissenting) reversed the trial court's suppression ruling, vacated the judgments of sentence, and remanded for a new trial. In ruling as it did, the court held: "We find that because of the length of time that elapsed between the shooting of the deer and the date of the warrant and the lack of proof of criminal activity, the evidence seized at the home of appellant Harvey Burkholder was the fruit of a search without a valid warrant. This evidence, therefore, should have been suppressed." *Commonwealth v. Burkholder*, 388 Pa.Super. 252, 258, 565 A.2d 472, 475 (1989). The Commonwealth petitioned this Court for allowance of appeal, which we granted.[7]

The Commonwealth raises two issues on appeal: whether appellees were barred from contesting the validity of the search warrant on appeal because they had not contested its validity before the trial court; and whether the Superior

6. Defense counsel moved as follows: "I would move that all of the evidence seized at a search which took place on January 29, 1988 [January 30, 1988], which a number of rifles and a number of spent and live cartridges were taken. (sic) The search warrant specifically authorized only the search and seizure of rifles, and so, therefore, the seizure of ammunition was beyond the scope of the warrant and therefore should be suppressed." *See* N.T. at 4.

7. *See* 525 Pa. 576, 575 A.2d 108 (1990).

Court erred in holding that the search warrant was invalid. For the following reasons we reverse the order of the Superior Court.

With respect to the waiver issue, it is clear from the record that at no time prior to trial, during trial, or in post-trial motions, did appellees contest the validity of the search warrant because of staleness, lack of probable cause or otherwise. Rather, appellees merely contested the execution of the warrant, arguing that "the seizure of ammunition was beyond the scope of the warrant and therefore should be suppressed." *See* N.T. at 5. The Commonwealth contends therefore that the issue has been waived. Appellees respond that "[I]t is true that in the instant case, the staleness claim, as an *independent* claim, was raised for the first time on appeal. But the issue of staleness, due to unexcused delay, was indeed an issue the thread of which was woven throughout the fabric of the testimony regarding the search warrant given at trial." *See* Appellees' Brief p. 8. However, appellees' references to the trial transcript give no indication whatsoever that appellees contested the time lapse between the initial investigation and the securement of the search warrant; nor is such a contention found elsewhere in the record, including pre-trial, trial and post-trial motions. Since the issue was not raised at the trial level, it was waived and should not have been addressed by the Superior Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985) ("a matter not raised in the trial court cannot be considered on appeal." *Id.*, 508 Pa. at 382, 498 A.2d at 811).

Consequently,[8] the order of the Superior Court is vacated and the judgments of sentence of the trial court are reinstated.

---

8.  Given our disposition of the Commonwealth's first issue, there is no need to address the Superior Court's analysis regarding the validity of the warrant itself, and we express no opinion with respect thereto.