685 A.2d 551

COMMONWEALTH of Pennsylvania

v.

**Louis PEARSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1996.

Filed Oct. 21, 1996.

315

Ralph D. Karsh, Pittsburgh, for appellant.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for appellee Com.

Before CAVANAUGH, CIRILLO, TAMILIA, KELLY, JOHNSON, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

JOHNSON, Judge:

In this appeal, we are asked to consider the propriety of the judgment of sentence imposed following Louis Pearson's convictions for possession of a controlled substance (cocaine), possession with intent to deliver a controlled substance, and possession of drug paraphernalia. We must also determine the proper procedure for the consideration of a claim of trial counsel's ineffectiveness that was presented for the first time in the appellant's concise statement of matters complained of on appeal filed pursuant to Pa.R.A.P.1925. For the reasons stated below, we affirm the judgment of sentence and remand the case to the trial court with the instruction to conduct an evidentiary hearing into Pearson's remaining ineffectiveness claim.

The record reveals the following facts. On July 8, 1992, several police officers and detectives from the narcotics section of the City of Pittsburgh Police Department executed a search warrant at 328 Collins Avenue. This warrant was issued based upon probable cause that crack cocaine and drug paraphernalia were present in the residence. The warrant specified that the residence was to be searched, as well as Pearson himself, for those items. Upon their arrival at the residence, the officers and detectives informed Amy Fordham, a resident at this address, that they had a warrant to search the residence for suspected narcotics. The officers discovered twenty-four knotted baggie corners each containing a rock of crack cocaine, weighing an aggregate total of 3.30 grams; cash totalling $1,076 in bills of assorted small denominations; two scales; and a suitcase, stereo equipment, an afghan, jewelry, and coins. The crack cocaine was found in a dresser drawer in the master bedroom of the residence and both scales were seized from the kitchen. The money was found in a hat attached to a stuffed animal in the residence. The suitcase, stereo equipment, afghan, jewelry and coins were discovered

together in a hallway closet. These items aroused suspicion and were seized by the police because the suitcase bore a tag bearing the name and address of Rebecca Lee Pumphrey, and this address was not 328 Collins Avenue. Upon further investigation of these items, the officers determined that Ms. Pumphrey had previously reported them stolen.

The officers then informed Fordham that she was under arrest for possession of a controlled substance, possession with the intent to deliver cocaine, and possession of drug paraphernalia. Pearson arrived at the residence approximately twenty-five minutes later. Pearson first attempted to persuade the police that his name was John Ritter, but then, after the police told him that they had seized photo identification cards with the name of Louis Pearson and what appeared to be his photograph, he admitted to being Louis Pearson. The police arrested Pearson for possession of a controlled substance, possession with the intent to deliver cocaine, and possession of drug paraphernalia. When the police informed him that Fordham was also being arrested on the same charges, Pearson stated that she was uninvolved with the cocaine seized from the residence. Pearson further stated that the cocaine belonged to him and that although he was not a user, he did sell cocaine. Subsequently, Ms. Pumphrey confirmed that the items found in the residence were those that she had reported stolen. Pearson was also charged with receiving stolen property as a result of the discovery of these items.

Following a jury trial, Pearson was found guilty of possession of a controlled substance (cocaine), possession with intent to deliver a controlled substance, and possession of drug paraphernalia. The jury, however, found Pearson not guilty of receiving stolen property. The court sentenced Pearson to a term of three to six years' imprisonment on the possession with intent to deliver conviction; no further penalty was imposed. Pearson did not file post-verdict motions. This appeal followed.

On appeal, Pearson argues, in essence, that the court erred in refusing to grant a mistrial after the prosecutor elicited testimony from a witness concerning Pearson's decision to

invoke his right to remain silent, and permitting the Commonwealth to introduce inadmissible hearsay testimony. In addition, Pearson argues that his counsel was ineffective for failing to: (a) object to the court's jury instruction concerning evidence that Pearson invoked his right to remain silent, (b) object to a portion of the prosecutor's closing argument and request an instruction that hearsay testimony could not be received as substantive evidence, and (c) investigate and call essential witnesses.

First, Pearson contends that the court erred in refusing to grant a mistrial after the prosecutor elicited testimony from a witness concerning Pearson's decision to invoke his right to remain silent. Initially, we note that "[w]hether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion." *Commonwealth v. Bonace,* 391 Pa.Super. 602, 608, 571 A.2d 1079, 1082, *appeal denied,* 526 Pa. 647, 585 A.2d 466 (1990).

We acknowledge that " '[i]t is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody.' " *Commonwealth v. Holloman,* 424 Pa.Super. 73, 78, 621 A.2d 1046, 1048 (1993), quoting *Commonwealth v. Gbur,* 327 Pa.Super. 18, 23, 474 A.2d 1151, 1154 (1984). Not every such reference, however, requires a new trial, *Commonwealth v. Mays,* 361 Pa.Super. 554, 558, 523 A.2d 357, 359, *appeal denied,* 516 Pa. 613, 531 A.2d 780 (1987), for the trial court may promptly and adequately give a cautionary instruction to cure what might otherwise be a reversible error. *Gbur, supra,* at 24, 474 A.2d at 1154. To determine whether a cautionary instruction can cure a reference to the accused's silence, courts must consider "1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction." *Id.* "If the reference to the accused's silence is of a nature that would seriously

compromise the jury's objectivity and is likely to deprive the accused of a fair trial, curative instructions are inadequate and a new trial is required." *Id.*

Here, the prosecutor called Detective David Whiteman to testify regarding inculpatory statements that Pearson made following his arrest. Detective Whiteman testified that after Pearson was provided with his *Miranda* warnings, Pearson admitted that the drugs recovered from Fordham's residence belonged to him and that Fordham had no connection to the drugs. N.T., September 8, 1994, at 69. According to the detective, Pearson then stated: "I sell drugs. I sell crack. I just started to sell it." *Id.* Later, the following exchange occurred:

Q. [By the prosecutor:] Did [Pearson] indicate for how long he had been selling crack cocaine?

A. [By Detective Whiteman:] When I attempted to ask him that he didn't want to answer any more questions.

*Id.* at 74. At that point, defense counsel moved for a mistrial, a conference was held at sidebar, and the jury was ushered out of the courtroom. *Id.* at 75. The prosecutor indicated that he neither intentionally elicited the statement nor expected the detective to respond as he did. *Id.* He thought instead that the detective would testify that Pearson stated that he had been selling drugs for "a couple of months." *Id.* The trial court concluded that any damage done by the detective's remark could be cured, and the court instructed the jurors upon their return as follows:

At the conclusion of the last session the police officer's response to a question was that at one point the Defendant did not want to answer any more questions. Once a person—any citizen of this country has been arrested they have an absolute right to remain silent. That is a right that is founded upon our Constitution. When you're arrested you don't have to say anything and that right is so important that a jury or a judge may not consider a person's silence any evidence of guilt. The fact that the Defendant decided to no longer answer any questions is absolutely no evidence against him and you may not consider any inference or any

adverse inference from the fact that at some point he decided or chose not to answer any more questions. Again, that is the most basic right that we all enjoy founded upon our Constitution so perhaps the best thing to do would be to disregard the statement or disregard the last response by the officer.

*Id.* at 81–82. Turning to the four-prong test set forth above, we conclude that the nature of the detective's reference concerning Pearson's desire to stop answering questions was prejudicial. *Gbur, supra* (prosecutor's reference to defendant's assertion of his right to remain silent was prejudicial). However, the detective had previously testified that Pearson provided an inculpatory statement after being advised of his rights. N.T., *supra,* at 69. "Therefore, the degree of prejudice caused by the reference to appellant's silence in this case was lessened somewhat by the fact that the jury had previously heard testimony that he did not remain silent." *Gbur, supra,* at 25, 474 A.2d at 1155; *see also Commonwealth v. Anderjack,* 271 Pa.Super. 334, 345, 413 A.2d 693, 699 (1979). Second, the trial court found, and we agree, that there is no record evidence which suggests that the prosecutor intentionally elicited the reference to Pearson's silence. Rather, the prosecutor stated that the detective's response was unexpected. N.T., *supra,* at 75. Third, the prosecutor made no attempt to exploit the remark, as he did not refer to it again. *Cf. Gbur, supra* (no misconduct on the part of the district attorney where he did not refer to the defendant's silence in any question directed to any witness). Finally, immediately upon the jurors' return to the courtroom, the trial court instructed them to disregard the detective's testimony concerning Pearson's decision not to answer any more questions. Therefore, we conclude that the court's instruction adequately cured the detective's reference to Pearson's silence following his arrest. Accordingly, we find no abuse of discretion in the trial court's refusal to grant Pearson's request for a mistrial.

██ Next, Pearson asserts that the trial court erred in permitting the Commonwealth to introduce inadmissible hearsay testimony concerning police procurement of the search

warrant. Pearson cites to three instances where he claims that the prosecutor was permitted to introduce such testimony. First, he cites the following passage from the prosecutor's opening statement:

> On July 8, 1992, Detective Joseph applied for a search warrant which was granted and authorized by a local magistrate and it gave him permission to search the residence at 328 Collins [Avenue] in the City of Pittsburgh in the East Liberty area and it gave him authority to search the person of the defendant.
>
> [Defense Counsel]: Objection; irrelevant.

N.T., *supra*, at 32. Next, he cites one of the prosecutor's questions to Detective Wilson, whereby he inquired, "on or around June 8, 1992, did you receive information which led you to seek a search warrant? Did you, in fact, have a magistrate...." *Id.* at 41. Defense counsel again objected on the grounds of relevancy and, after the objection was overruled, the detective testified that the warrant authorized the police to search both Pearson and the residence at 328 Collins Avenue for narcotics. *Id.* at 42–44. Finally, Pearson cites the following portion of the prosecutor's closing argument:

> Now think back? How is it that the police got to Collins Avenue? They got a search warrant. They had authority to go there and look. What was it they went to look for? They had authority to search for drugs at Collins Avenue and they had authority to search the Defendant.

*Id.* at 179–80. Initially, we note that hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted therein. *Commonwealth v. Smith*, 436 Pa.Super. 277, 285, 647 A.2d 907, 911 (1994). We fail to see how any of the above-cited language satisfies this definition. Moreover, in none of these instances did defense counsel lodge a hearsay objection. Failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal. Pa.R.A.P. 302(a); *Commonwealth v. Burkholder*, 528 Pa. 119, 595 A.2d 59 (1991). Further, Pearson may not raise a new theory for an objection made at trial on his appeal. *Commonwealth v. Mehalic*, 382 Pa.Super. 264, 555 A.2d 173 (1989). Accordingly,

because the relevant evidence did not constitute hearsay and was, in any event, not subject to a timely hearsay objection, Pearson has waived these claims for appeal purposes.

Pearson's three remaining claims allege ineffective assistance of his trial counsel, G. William Bills, Esquire. The standard for evaluating the effectiveness of counsel is well-established: counsel will be found to be ineffective where there is (1) arguable merit to the underlying claim, (2) the course chosen by counsel does not have a reasonable basis designed to effectuate the appellant's interest, and (3) the appellant demonstrates prejudice. *Commonwealth v. Carter,* 443 Pa.Super. 231, 242, 661 A.2d 390, 395 (1995), *appeal denied,* 544 Pa. 623, 675 A.2d 1242 (1996). Moreover, the "burden of establishing ineffective assistance of counsel rests upon the appellant since counsel's representation is presumed to be effective." *Commonwealth v. Granberry,* 434 Pa.Super. 524, 531, 644 A.2d 204, 207 (1994). Finally, counsel can never be found to have been ineffective for failing to raise a meritless claim. *Commonwealth v. Bracey,* 541 Pa. 322, 335 n. 8, 662 A.2d 1062, 1068 n. 8 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996).

With these standards in mind, we now address Pearson's ineffectiveness claims. In his brief to this Court, Pearson asserts three bases for a finding of trial counsel's ineffectiveness. First, Pearson asserts that counsel was ineffective for failing to object to the court's jury instruction concerning Pearson's invocation of his right to remain silent. In addition, Pearson contends that trial counsel was ineffective for failing to lodge a hearsay objection to that portion of the prosecutor's closing argument that referred to the procurement of the search warrant, and for failing to request an instruction that hearsay testimony cannot be received as substantive evidence. Following our review of the trial transcript, we have concluded that the court's instruction concerning Pearson's right to remain silent was sufficient to cure any prejudice that may have resulted from Detective Wilson's testimony that Pearson refused to answer one of his questions. Further, we reviewed the cited portion of the prosecutor's closing argument and

found that it did not constitute hearsay. Consequently, we conclude that these claims lack arguable merit, and trial counsel cannot be found to have been ineffective on this basis. *Bracey, supra.*

 As his final claim, Pearson asserts that trial counsel was ineffective for failing to investigate and call two witnesses.

> To establish a claim that counsel was ineffective for failing to investigate or call witnesses, [Pearson] must establish four essential points of information. First, he must identify the alleged witnesses. Second, he must demonstrate that defense counsel knew of the existence of those witnesses prior to the time of trial. Third, he must demonstrate the witnesses would have provided material evidence at the time of trial. Fourth, [Pearson] must establish the manner in which the witnesses would have been helpful to his or her case.

*Commonwealth v. Poindexter,* 435 Pa.Super. 509, 521, 646 A.2d 1211, 1216 (1994), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995).

Here, Pearson asserts that counsel was ineffective for failing to call Orlando Jacobs and Donald Shrager, Esquire. At trial, Amy Fordham testified that the money recovered from her residence was part of a settlement Pearson had received from a lawsuit. N.T., *supra,* at 139–40. She stated that Pearson had given her part of the proceeds to buy clothes for her children. *Id.* at 147. In his brief to this Court, Pearson claims that he notified counsel that Jacobs and Shrager were potential witnesses and indicated that he wanted them to be called at trial. Pearson contends that Attorney Shrager's testimony would have corroborated Fordham's testimony, as he had represented Pearson in the above-mentioned lawsuit, and that Shrager would have testified that the money recovered from the hat attached to the stuffed animal came from that settlement. In addition, Pearson asserts that Orlando Jacobs would have testified that the cocaine and drug paraphernalia recovered from the residence belonged to Jacobs,

not Pearson. Pearson further asserts that the absence of testimony from these witnesses prejudiced him. Thus, in his brief to this Court, Pearson alleges all of the elements set forth in *Poindexter.*

█ Our review of this matter is hampered, however, by the procedural posture of this case. Although we can determine that Pearson's underlying claim in this instance has arguable merit, and we will concede that Pearson may have suffered prejudice as a result of counsel's action, we cannot, on this record, determine whether counsel had a reasonable strategy designed to effectuate Pearson's interests in pursuing the chosen course of action. The trial court did not hold an evidentiary hearing concerning Pearson's ineffectiveness claims. In fact, because of the way in which this appeal was taken, the trial court *could not* have held such a hearing. We note, again, that Pearson elected not to file post-verdict motions, as is his right under the current Rules of Criminal Procedure. Pa.R.Crim.P. 1410(B). Instead, Pearson filed a direct appeal of his judgment of sentence. Once a notice of appeal is filed, a trial court is divested of jurisdiction to act further on the case. Pa.R.A.P. 1701(a). It is true that, in some instances, the Rules of Appellate Procedure do permit the trial court to act after an appeal is taken; to wit:

> After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
>
> (1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

Pa.R.A.P. 1701(b)(1).

In *Commonwealth v. Wertelet*, 446 Pa.Super. 352, 355, 666 A.2d 1087, 1089 (1995), a panel of this Court, in dicta, asserted that the trial court may conduct an evidentiary hearing following the taking of an appeal pursuant to Rule 1701(b)(1)

because this is a matter "otherwise ancillary to the appeal." We note that *Wertelet*, a one-issue case submitted to this Court without the benefit of oral argument, is similar to the present case in that the appellant raised his ineffectiveness claim for the first time in his concise statement of matters complained of on appeal prepared pursuant to Pa.R.A.P. 1925(b). In *Wertelet*, the appellant asserted that his counsel was ineffective for failing to advise her of her right to testify at trial. The Commonwealth argued on appeal that, because claims of counsel's ineffectiveness must be pursued at the first available opportunity, Wertelet had waived her claim by failing to raise the issue in a post-verdict motion. The *Wertelet* court declined to require a criminal defendant to file post-verdict motions in all cases where ineffectiveness of counsel is claimed because the revised Rule 1410 no longer requires that such motions be filed. We agree with this determination and will also not impose such a requirement. An appellant cannot be required by this Court to file a post-verdict motion when the rules of procedure as promulgated by the Pennsylvania Supreme Court explicitly dictate otherwise. *See* 42 Pa.C.S. § 1722(a)(1) (the Pennsylvania Supreme Court shall have the power to prescribe the rules of procedure that govern Pennsylvania Courts); *see also Commonwealth v. Dugger*, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985) ("The formal purpose of the Superior Court is to maintain and effectuate the decisional law of this [Supreme] Court as faithfully as possible."). However, a criminal defendant who fails to timely assert alleged errors in the trial court that require action on the part of that court may suffer a consequence for his failure to follow this avenue of redress prior to appeal. *Cf. Commonwealth v. Hodge*, 441 Pa.Super. 653, 658 A.2d 386 (1995) (holding that a criminal defendant's election not to file an optional post-verdict motion resulted in a waiver of the claim that the verdict was contrary to the weight of the evidence); *see also Commonwealth v. Holmes*, 444 Pa.Super. 257, 263, 663 A.2d 771, 774 (1995) ("The fact that the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) in the instant case does not distinguish it from *Hodge* in that notwithstanding appellant's statement pursuant to Pa.R.A.P.1925, the trial court had no basis upon which to

grant a new trial without a motion for a new trial before it. Thus, it could not exercise its discretion in granting or denying same.").

In *Wertelet*, the trial court had correctly noted that it could not conduct a hearing or otherwise consider the matter because the case was on appeal. *Wertelet, supra,* at 355, 666 A.2d at 1088. The appellant's underlying claim in *Wertelet* was found by the panel of this Court to have arguable merit and was determined to have established that the appellant suffered prejudice. *Id.* at 356, 666 A.2d at 1089. Thus, an evidentiary hearing was necessary, and the panel remanded the case to the trial court for a determination of whether counsel had a reasonable basis for choosing the course of action he adopted. *Id.* The *Wertelet* Court stated, however, that while Rule 1701(b)(1) permitted the trial court to conduct a hearing, in its view, this Rule prohibits the trial court from entering a dispositional order on the ineffectiveness claim. *Id.* at 355, 666 A.2d at 1088.

While noting that "because of the newness of these procedures, the trial court could not have foreseen our holding that it could have conducted an ineffectiveness hearing following the filing of the appeal[,]" *id.* at 356, 666 A.2d at 1089, the *Wertelet* Court inferred that the trial court committed an error by failing to hold the evidentiary hearing on Pearson's ineffectiveness claims. We hold that the trial court did not commit such an error. As stated previously, the trial court was totally divested of jurisdiction by the taking of the appeal. Pa.R.A.P. 1701. We cannot find, as the *Wertelet* court did, that an ineffectiveness hearing is permitted by Rule 1701 as being "ancillary to the appeal." The rule gives examples of what is ancillary to an appeal; namely, the clarification of orders and the correction of formal errors in, for example, docket entries, transcription of the record, and the grant of a supersedeas motion. *E.g., Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utility Commission,* 653 A.2d 1336 (Pa.Cmwlth.1995), *aff'd,* 543 Pa. 307, 670 A.2d 1152 (1996) (finding that a trial court is empowered under Pa. R.A.P. 1701(b)(1) to correct non-substantial technical amend-

328

ments to an order, make changes in the form of a decree, and modify a verdict to add prejudgment interest); *Tanglwood Lakes Community Association v. Laskowski,* 420 Pa.Super. 175, 616 A.2d 37 (1992) (finding that the trial court could properly enforce its order by imposing sanctions for lack of compliance with that order against an appellant who did not seek supersedeas or a stay of the court's original order pending the appeal); *First Pennsylvania Bank, N.A. v. National Union Fire Insurance Company of Pittsburgh, Pa.,* 397 Pa.Super. 612, 580 A.2d 799 (1990) (finding that the trial court's amendment of an order after the filing of an appeal to include specific damages amount was proper under Pa.R.A.P. 1701 as the court merely took action to correct a formal error).

Consideration of a claim that trial counsel was ineffective is inherently different from such permitted ministerial actions in that it does not correct or add upon what the trial court has already decided; rather, such a claim attacks the integrity of the trial itself. A claim of counsel's ineffectiveness is a challenge to the very validity of the conviction and sentence, and is an objection of Constitutional dimensions. We cannot conclude that such a challenge is subordinate to the taking of an appeal. We accordingly reverse that part of *Wertelet* that found that the trial court may conduct a hearing regarding claims of ineffectiveness of counsel after the notice of appeal has been filed. We hold, instead, that the trial court cannot conduct a hearing on the matter unless and until this Court remands a case with instructions to hold such a hearing. We note that not every claim will require this evidentiary hearing; in the present case, Pearson's first two claims can properly be addressed based upon the record before us. Only when the underlying issue raised is arguably meritorious, and the appellant has established that he has suffered prejudice by the alleged ineffectiveness, will such a hearing become necessary. The instant case presents such a claim.

Moreover, we note that the only issue properly before our Court at this time concerns the validity of Pearson's judgment of sentence. The *Wertelet* court also erred in

failing to address the validity of the appellant's judgment of sentence. As an appellate Court, we must either affirm the judgment of sentence or, where the trial court has committed an error, vacate that judgment. When this Court determines that an appellant's judgment of sentence is proper pending resolution of the alleged ineffectiveness claim, the appellant will not be automatically free to escape his term of incarceration while awaiting the evidentiary hearing. This result will discourage the filing of frivolous claims asserting ineffectiveness of counsel in an attempt to avoid a duly imposed judgment of sentence. In this case, we have not found that the trial court committed error or abused its discretion in any way to permit us to do other than affirm Pearson's judgment of sentence. Because his claim that trial counsel was ineffective for failing to call two witnesses may have merit, however, we must remand that issue to the trial court, with instructions to conduct an evidentiary hearing on counsel's reasonable basis for the actions he took at trial.

Based upon the foregoing, we affirm the judgment of sentence and remand solely for an evidentiary hearing on Pearson's ineffectiveness claim which we have indicated is of arguable merit. If, on remand, the trial court concludes that Pearson's counsel was ineffective, sentence should be vacated and a new trial granted, subject to the Commonwealth's right of appeal. If the trial court on remand finds no ineffectiveness, however, Pearson shall have a right to appeal this finding within 30 days of the entry of the trial court's order. *Commonwealth v. Kauffman,* 405 Pa.Super. 229, 237, 592 A.2d 91, 95 (1991), *appeal denied,* 529 Pa. 617, 600 A.2d 534 (1991).

Judgment of sentence **AFFIRMED.** Case **REMANDED** for an evidentiary hearing. Jurisdiction **RELINQUISHED.**

CAVANAUGH, J., joins in the Majority Opinion and files a Concurring Opinion.

CAVANAUGH, Judge, concurring.

I join in the majority opinion and would simply add that I believe that in the interest of temporal efficiency, and the

avoidance of the potential for double appeals, Pa.R.A.P. 1701(b)(1) could and should be amended as to criminal cases to permit the trial court, on application, to conduct ineffective assistance of counsel hearings and to make proposed findings and a proposed disposition thereon.