**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FALEEF AKEEM CALDWELL | : | |
| | : | |
| Appellant | : | No. 1595 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 11, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000123-2015

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:         **FILED JUNE 5, 2023**

Faleef Caldwell appeals the judgment of sentence imposed by the Delaware County Court of Common Pleas after he was convicted of possession with intent to distribute cocaine ("PWID") and three counts of illegally possessing a firearm in violation of 18 Pa. C.S.A. § 6105. The charges arose after Caldwell's parole agent found drugs and a shotgun in a basement bedroom in the house with Caldwell's approved parole plan address, and the police subsequently uncovered more drugs, two more firearms and other contraband in the room. Caldwell argues the evidence at trial was insufficient to establish he had constructive possession of the drugs or the firearms. He also argues the trial court abused its discretion by admitting hearsay

---

[*] Former Justice specially assigned to the Superior Court.

testimony from the parole agent, failing to grant a mistrial based on the parole agent's inadmissible testimony and failing to grant his motion for a new jury panel. We affirm.

While on parole for a previous PWID conviction,[1] Caldwell was assigned a new parole officer, Agent Melissa Tammaro, in August 2014. On August 13, 2014, Agent Tammaro, along with two other parole officers, went unannounced to 1239 Rainer Road in Brookhaven, Caldwell's approved parole plan address, to introduce herself to Caldwell. **See** N.T. Trial, 4/27/2022, at 227-228.[2] [3] Agent Tammaro knocked on the door, and an unidentified adult female answered. **See** N.T., 4/27/2022, at 228. After Agent Tammaro identified herself, she asked the female if Caldwell was home. The female replied that Caldwell was home and in his bedroom. **See id.** She then led

_____

[1] **See** CP-23-CR-0006704-2011.

[2] The notes of testimony and the trial court opinion both spell the street name of Caldwell's approved parole plan address as "Raynor." However, the record is clear that the correct spelling of the street is "Rainer" and there is no dispute about the actual address of the house. **See, e.g.,** Special Conditions of Parole, 6/30/2014, at 1 (unpaginated) (listing Caldwell's "approved residence located at 1239 Rainer Road.")

[3] The record contains two separate notes of testimony from the trial on April 27, 2022. One entry contains notes of testimony from a pretrial hearing on motions in *limine*, jury selection and Agent Tammaro's testimony at trial, all of which occurred on April 27, 2022. The other entry contains only the notes of testimony from Agent Tammaro's testimony. The page numbers for Agent Tammaro's testimony are different in each of the entries. We use the page numbers from the first entry because the resolution of Caldwell's issues requires us to cite to the notes of testimony from the hearing on the motions *in limine*, jury selection as well as Agent Tammaro's testimony.

Agent Tammaro to a room in the basement, but Caldwell was not there. *See id.* at 230-231.

Agent Tammaro noted the room had a back door leading to the outside of the house. *See id.* at 232. She also saw, in plain view, several shotgun shells on the nightstand and a clear plastic bag containing an off-white substance that she suspected to be cocaine on the bed. *See id*. The agents searched the room to make sure Caldwell was not hiding there, and found a shotgun under the bed. *See id.* at 233.

The agents called the police. The police obtained consent to search the house from Caldwell's mother, who was the owner of the house. *See* N.T., 4/28/2022, at 6. The police searched the basement room and found, among other things, a semi-automatic pistol, a revolving handgun, ammunition, over 200 small baggies, clear plastic vials, two digital scales, and two baggies of a white, chalky substance. *See id.* at 10-14, 21. The police also found a Pennsylvania state identification card belonging to Caldwell in the room, which listed an address of 1239 Rainer Road. *See id.* at 15.

Caldwell was arrested and charged with PWID and three counts of person prohibited from possessing firearms pursuant to Section 6105. He filed a motion to suppress, which the court denied after a hearing. The case ultimately proceeded to a jury trial.

Before trial began, Caldwell filed several motions *in limine*. One of those motions was a "motion to preclude hearsay testimony of 'unnamed female

family member',", who remained unidentified. Specifically, the motion sought to preclude Agent Tammaro from testifying, as she did at Caldwell's suppression hearing, that the female who answered the door told Agent Tammaro that Caldwell was in "his bedroom" and that Caldwell and his girlfriend had just been in the bedroom. *See* Motion *in Limine*, 4/26/2022, at 1-2. The motion sought preclusion of these statements on the basis that they constituted hearsay. *See id.* at 2.

The trial court heard arguments on the motion. It ruled Agent Tammaro was permitted to testify that the unknown female told the agent that Caldwell was home and led her to a room in the basement, for the purpose of showing the history of the case and the effect on the listener, *i.e.* how Agent Tammaro came to be in the basement of the house. The court ruled, however, that Agent Tammaro could not testify that the female referred to that room as Caldwell's room. *See* N.T., 4/27/2022, at 8-9.

The parties also agreed to bifurcate the PWID charge from the Section 6105 charges. To that end, the parties agreed to submit the question to the jury of whether Caldwell possessed firearms, but have the trial court decide whether Caldwell had a prior conviction which made him ineligible to possess a firearm pursuant to Section 6105.

At trial, the Commonwealth first called Agent Tammaro to the stand. After Agent Tammaro testified an adult female answered the door when the agent knocked at 1239 Rainer Road, the Commonwealth asked the agent if

she had then been directed to a particular part of the house. Agent Tammaro responded, "yes, this female family member led me inside the front door. She told me he was in a room - in his room. I followed her to the basement." N.T., 4/27/2022, at 228.

Defense counsel requested a sidebar and asked for a mistrial given that the agent's testimony that she had been led to "his room" was inadmissible under the motion *in limine* the trial court had just granted. The trial court acknowledged the error but denied the motion for a mistrial on the basis that it could cure the error with instructions to the jury. Agent Tammaro then testified, without objection, that the female family member led her to a room in the basement. *See id.* at 230-231. Agent Tammaro finished testifying, and the jury was excused for the day.

The following morning, before testimony began, the court instructed the jury to disregard Agent Tammaro's statement that she had been directed to a room belonging to Caldwell. *See* N.T., 4/28/2022, at 4. The Commonwealth proceeded to present expert testimony that the drugs found in the bedroom were possessed with the intent to deliver.

Defense counsel argued in his closing, in essence, that the Commonwealth had failed to prove Caldwell possessed the contraband found in the basement room because the Commonwealth had not established that the room was Caldwell's or even that Caldwell was living at the house. Nonetheless, the jury convicted Caldwell of PWID and found that Caldwell

possessed three firearms. Consistent with the parties' stipulation, the trial court then acted as fact-finder for purposes of determining whether Caldwell had a prior conviction that made it illegal for him to possess those firearms and found him guilty of all three counts of violating Section 6105.

On May 11, 2022, the trial court sentenced Caldwell to five to ten years' imprisonment on the Section 6105 firearm offenses, and a concurrent probationary term of twenty years for the PWID conviction. Caldwell filed an untimely post-sentence motion on May 24, 2022, but filed a timely notice of appeal on June 6, 2022. *See* Pa.R.Crim.P. 720 (A)(3) (providing that defendants must file a notice of appeal within 30 days of the imposition of sentence if they do not file a timely post-sentence motion). Both Caldwell and the trial court complied with Pa.R.A.P. 1925. On appeal, Caldwell raises the following four issues:

I. Was the evidence insufficient to support convictions for [PWID] and [person prohibited from possessing a firearm in violation of Section 6105] where [Caldwell] was not present at the time of the search and the only evidence even remotely suggestive of constructive possession of the contraband found in one room of a multi-room house was 1) parole paperwork which showed that he had listed the house in question as his address and 2) an identification card that was found in the room with the contraband, given that someone else's similarly important personal documents were found in the same room?

II. Did the trial court err in admitting testimony from [Caldwell's] parole agent that she was directed to a particular basement bedroom after asking if [Caldwell] was home because the testimony was inadmissible, implied hearsay in that it contained the assertion that [Caldwell] could be found in the bedroom and ownership of that

> bedroom and the items therein was the only issue in the case?
>
> III. Whether the trial court erred in denying [Caldwell's] motion for a mistrial where the parole agent violated the court's order not to introduce hearsay testimony that someone else had told her that the room containing the contraband was [Caldwell's] room and constructive possession of the drugs and gun was the only issue in the case?
>
> IV. Did the trial court err in denying [Caldwell's] motion for a new jury panel where the trial court told the jury panel that [Caldwell] was charged with being a person not to possess [in violation of Section 6105] at the beginning of jury selection despite an agreement to bifurcate the [Section 6105] charge?

Appellant's Brief at 9-10 (suggested answers omitted).

Caldwell first argues the evidence was insufficient to support a finding that he constructively possessed the drugs and firearms found in the basement room, for purposes of both his PWID and his person prohibited from possessing firearms charges. He argues, in essence, there was insufficient evidence for the jury to conclude that he lived in the house, much less that he lived in the basement bedroom of the multi-occupant house, and therefore that he constructively possessed the contraband found in that room. This claim fails.

The evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all of the elements of the offense beyond a reasonable doubt. *See Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008). The

Commonwealth may sustain its burden entirely by circumstantial evidence. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. *See id.*

To sustain Caldwell's conviction for persons prohibited from possessing a firearm, the Commonwealth had to prove Caldwell possessed a firearm and that he had previously been convicted of one of 38 enumerated offenses which made him ineligible to possess that firearm. *See Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa. Super. 2017); 18 Pa. C.S.A. § 6105(b). To sustain his conviction for PWID, the Commonwealth had to prove Caldwell possessed a controlled substance and that he had the intent to deliver the controlled substance. *See Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011).

As neither the firearms nor the drugs and paraphernalia were found when Caldwell was present, the Commonwealth was required to prove Caldwell had constructive possession of the firearms and other contraband. *See id.* Constructive possession has been defined as the "ability and intent to exercise control over the" contraband in question. *Id.* (citation omitted). Constructive possession is "an inference arising from a set of facts that possession of the contraband was more likely than not[,]" *see Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013)(citation

omitted), and may be established by the totality of the circumstances, *see Estepp*, 17 A.3d at 944.

Here, the trial court found the evidence was sufficient to support the jury's finding that Caldwell constructively possessed the firearms and the drugs. In support, the trial court noted Caldwell had listed his residence as 1239 Rainer Road for purposes of his approved parole plan address and that when Agent Tammaro went to that address and asked the woman who answered the door if Caldwell was home, she was directed to the basement room, a room which contained all of the contraband found. Notably, the room also contained a Pennsylvania state identification card for Caldwell listing his address as 1239 Rainer Road. Taken together, the court found this evidence was sufficient to establish Caldwell was in constructive possession of the firearms and drugs.

Caldwell acknowledges his identification card was found in the basement bedroom but claims this does not sufficiently connect him to the room because the searching police officer found other personal documents - a social security card and a birth certificate - in the room that the officer did not remember as belonging to Caldwell. However, Caldwell clearly elicited these facts during his cross-examination of the police officer who found the social security card and the birth certificate. *See* N.T. 4/28/2023, at 25-27. As such, the jury was well aware of these facts when considering whether Caldwell had constructive possession of the drugs and the firearms found in the basement room.

Moreover, as the Commonwealth points out, the discovery of the other documents in the room does not negate the fact that Caldwell used the 1239 Rainer Road address as his approved residence in his parole paperwork, that his parole officer was directed to the basement room after asking if Caldwell was home, and that the police found Caldwell's identification card and contraband in the room to which they had been directed. We see no error in the trial court's conclusion that given the totality of these circumstances, it was reasonable for the jury to infer that Caldwell constructively possessed the contraband in question. **See Hopkins**, 67 A.3d at 820. No relief is due.

In his second claim, Caldwell argues the trial court abused its discretion by allowing Agent Tammaro to testify that the female who answered the door led her to a particular bedroom in the basement. He now alleges, for the first time, that this was inadmissible because it was implied hearsay. We agree with the Commonwealth that this issue is waived.

In the first place, Caldwell did not ask for this testimony regarding the female's actions to be excluded in his motion *in limine*. Instead, he asked that Agent Tammaro be precluded from testifying she was told the basement bedroom was Caldwell's room and that he and his girlfriend had just been in the bedroom. As the trial court found, it granted the motion *in limine* and precluded Agent Tammaro from testifying about the female family member's statements identifying the basement room as belonging to Caldwell and that

Caldwell and his girlfriend had just been in the room. **See** Trial Court Opinion, 8/30/2022, at 5.

The court also specifically noted that it had suggested at the hearing on the motion *in limine* that the Commonwealth have Agent Tammaro testify that, when she asked the female family member if Caldwell was home, the female led her to a room in the basement, as this would avoid the concerns with hearsay. **See** N.T. Hearing, 4/27/2022, at 7-9. Caldwell did not object at that time.

In fact, Caldwell indicated he agreed that allowing the agent to testify she had been directed to a basement bedroom would explain how she got to be there without improperly implicating the rule against hearsay. **See id.** at 7. He also failed to object to this particular testimony by Agent Tammaro at trial. **See** N.T., 4/27/2022, at 230, 231. As such, this issue is waived. **See Commonwealth v. Radecki,** 180 A.3d 441, 455 (Pa. Super. 2018) (citations omitted) (reiterating that in order to preserve an issue regarding the admissibility of evidence, a party must make a timely and specific objection to the challenged evidence, and, in fact, must object "at the earliest possible stage" of the process to afford the trial court the opportunity to remedy any error).

Further, as the Commonwealth points out, Caldwell is now arguing Agent Tammaro's testimony that the female who opened the door led her to the basement room was inadmissible because it constituted "implied hearsay."

To that end, he maintains the unknown female's actions of leading Agent Tammaro to the basement bedroom implied that the room belonged to Caldwell. Again as the Commonwealth points out, this is a new theory of inadmissibility that Caldwell did not raise before the trial court. Instead, he raises it for the first time on appeal. As such, we agree with the Commonwealth that Caldwell's "implied hearsay" claim is waived. **See Commonwealth v. Pearson**, 685 A.2d 551, 555 (Pa. Super. 1996) (stating that a defendant may not raise a new theory for an objection on appeal that was not raised before the trial court).

In his third claim, Caldwell complains the trial court abused its discretion by failing to grant his motion for a mistrial after Agent Tammaro testified she was told Caldwell was in "his room" in direct contravention of the court's order granting the motion *in limine*. While we agree there was a violation of the order, we also find, for the reasons explained below, that this claim ultimately does not provide Caldwell with any basis for relief.

As noted above, in granting Caldwell's motion *in limine*, the trial court ruled that Agent Tammaro was not permitted to testify that the female who answered the door told the agent that Caldwell was in his room. In light of this ruling, after Agent Tammaro testified that an unknown female answered the door, the Commonwealth asked Agent Tammaro "were you then directed to a part of the house?" N.T., 4/27/2022, at 228. Rather than testifying she

was directed to the basement, the agent replied: "she told me [Caldwell] was in a room - in his room." *Id.*

There is no dispute this testimony violated the court's pretrial ruling, and Caldwell immediately moved for a mistrial on the basis of the testimony. The court denied the motion for a mistrial, and Caldwell now claims this was an abuse of the court's discretion.

We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *See Commonwealth v. Wilson*, 273 A.3d 13, 21 (Pa. Super. 2022), *denying petition for allowance of appeal,* 285 A.3d 324 (Pa. 2022). A mistrial is an extreme remedy, and will be granted "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (citation omitted), A mistrial is not warranted where cautionary instructions are adequate to overcome any prejudice to the defendant, and it is presumed that juries follow the instructions of a trial court to disregard inadmissible evidence. *See Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000).

Here, the trial court denied Caldwell's motion for a mistrial after determining that an instruction to the jury would remedy the error. The following morning, the court instructed the jury in a way "so as not to unnecessarily highlight the issue." Trial Court Opinion, 8/30/2022, at 7. The court stated:

> All right, ladies and gentleman, before we get started with the next witness, upon consideration last night and in slowing things down, which I rarely do, I do need to advise you of something, and it is as follows.
>
> You must disregard Agent Tammaro's testimony that the adult female directed her to his, meaning [Caldwell's], room. You may only consider that Agent Tammaro was directed to a room."

N.T., 4/28/2022, at 3-4.

In its Rule 1925 opinion, the trial court specifically reiterated its finding that this instruction cured any potential prejudice from the erroneous testimony, making a mistrial unnecessary.

Caldwell takes issue with this conclusion, and argues the cautionary instruction given by the court did not cure the prejudice created by Agent Tammaro's improper testimony. In support, Caldwell relies on *Commonwealth v. Satzberg*, 516 A.2d 758 (Pa. Super. 1986). There, the defendant was charged with theft by unlawful taking and related offenses. In opening remarks, the prosecutor stated the defendant "did nothing for two and a half years except to do drugs." *Id.* at 762. Defense counsel moved for a mistrial, but the trial court denied the motion and allowed the prosecutor's statement to stand in light of the prosecutor's representations that the defendant was motivated to commit the charged crimes because of his drug use. *See id.* When the evidence failed to establish this by the end of trial, the trial court, in its closing charge, cautioned the jury to ignore any statements about the defendant's alleged drug use. *See id.* The defendant was convicted. However, on appeal, this Court found the trial court should have granted a

mistrial because the cautionary instruction did not cure the prejudice to the defendant. *See id.* at 763.

We do not agree with Caldwell that he is entitled to relief based on *Satzberg*. In the first place, the challenged statement in *Satzberg* was one that came directly from the prosecutor. Here, Caldwell does not assert there was prosecutorial misconduct and, in fact, the trial court specifically found that the framing of the prosecutor's question made it clear that the prosecutor was following, or attempting to follow, the court's pretrial order. In addition,

> [T]he jury in *Satzberg* was permitted to contemplate the prosecutor's statement during the entire trial, as the statement was made in opening argument and the trial judge only cautioned the jury at the end of the trial after it became apparent that the evidence did not support drug use as a motive. [This] Court believed that this tainted the entire trial to a point where a cautionary instruction in the closing charge would be ineffectual.

*Simpson*, 754 A.2d at 1273.

In contrast, here, the trial court instructed the jury first thing on the day of trial following Agent Tammaro's testimony, and told the jury it was to disregard the impermissible testimony. As such, the jury in this case, unlike the jury in *Satzberg*, was not left with the opportunity to contemplate the inadmissible testimony throughout the entire trial. Instead, after Agent Tammaro testified, and before any testimony by the next witness was presented, the trial court instructed the jury in no uncertain terms that the jury was to disregard the improper statement made by Agent Tammaro. Our

case law is clear that juries are presumed to follow such instructions. **See Simpson**, 754 A.2d at 1272.

In the end, we are not persuaded the trial court abused its discretion in concluding that its instruction remedied any prejudice from the agent's improper testimony and therefore, that a mistrial was not warranted.

In his fourth and final issue, Caldwell argues the trial court abused its discretion by denying his motion for a new jury panel after the trial court told the jury panel that Caldwell had been charged with "person not to possess a firearm." N.T., 4/27/2022, at 27.[4] He claims the court's actions "un[did] the bifurcation of the § 6105 from the PWID charge that [the court] had already ordered." Appellant's Brief at 36. This claim also fails.

In rejecting this claim, the trial court explained that it had

uttered a[n] "isolated, passing reference" to a prior offense when it advised the jury panel that [Caldwell] was charged with the offense of Person Not to Possess a Firearm. The court did not elaborate upon this, nor was the phrase raised again. Instead, to ensure the jury pool was not tainted by this phraseology, the court inquired of twelve potential jurors during individual *voir dire* asking for their understanding of [Caldwell's] charges. Not one juror indicated an understanding that the charge of Possession of Firearms Prohibited required that [Caldwell] had been convicted of a prior offense. The potential jurors stated they believed the charges were [:] "intent to give a firearm to someone else;" "[did not have a permit or license] to possess a firearm;" "illegal possession of weapon;" "selling guns without a license or something;" charged with [supposedly] having a firearm;" and "illegally discharg[ing] a gun," among others. It is clear that, even

_____

[4] We note that Caldwell did not cite to the place in the record where this occurred, as is his burden to do pursuant to Pa.R.A.P. 2119(c).

- 16 -

if the court did err in its statement to the jury, the error did not taint the jury pool and was harmless.

Trial Court Opinion, 8/30/2022, at 11 (citations to notes of testimony omitted).

Even had the jury understood from the court's mere recitation of the charge that the Commonwealth could only convict a person charged with "person not to possess a firearm" if the person had a previous conviction that made it ineligible for him to possess a firearm, we still would not find any undue prejudice. The court did not mention any particular, previous offense of which Caldwell had been convicted, much less elaborate or present any evidence of that conviction. Rather, it made an isolated remark during its lengthy opening charge to the jury that Caldwell had been charged with "person not to possess a firearm." Given these circumstances, we fail to see any error in the trial court's conclusion that Caldwell has not established he was prejudiced by the court's statement. *See Commonwealth v. Miller*, 481 A.2d 1221, 1222 (Pa. Super. 1984) (stating that a witness's isolated and passing reference to a defendant's prior criminal activity, which did not give details of a prior offense, did not entitle the defendant to relief).

Because none of Caldwell's claims merit relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2023