691 A.2d 966

COMMONWEALTH of Pennsylvania,

v.

**Paul Leroy ERVIN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1996.

Filed April 1, 1997.

784

John B. Elbert, Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, HOFFMAN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus.

This is a direct appeal from the judgment of sentence entered after a jury found appellant, Paul Leroy Ervin, guilty of sexually abusing his daughters. We affirm.

The victims, M.T. and A.T., are aged eleven and ten, respectively. The children live with their mother in Chambersburg, Franklin County. In late June of 1995, they went to visit for several days with their father and his wife in Chalfont, Bucks County. On July 1st of that year, M.T. sat on her father's lap while playing with a computer. Appellant requested the child to fetch some beer for him and take it to the basement. When M.T. complied with her father's request, he placed his daughter on a chair and removed her shorts and underwear. He then proceeded to touch the girl's vaginal area. Appellant stopped these activities when he became aware that his wife had returned to the house. He threatened to beat M.T. with a wooden paddle if she told anyone about the incident.

Later on the same day, appellant sat at the computer with M.T. on his lap. After awhile, appellant pushed the girl's shorts aside and placed his finger into M.T.'s vagina. He moved his finger around inside the child, then removed his hand and licked his fingers. Appellant repeated these actions several times. Following the incident in the computer room, appellant took A.T. for a walk through a wooded area to a pond located near the house. Appellant forbade his other children to accompany them. Once they reached the pond, appellant removed A.T.'s pants and underwear and lowered his own trousers to his ankles. Appellant then raped the child vaginally and sodomized her. He covered her mouth with his hand to prevent her from screaming. After appellant finished, he threatened to beat A.T. with a wooden paddle. He also stated that if the little girl told anybody about the rape, he would remove the child from her mother's custody and never let her see her mother again.

Despite her father's threats, A.T. informed her sister about the events that occurred at the pond. M.T. telephoned her mother as soon as she could. The girls' mother immediately drove from her home in Chambersburg to the police station near appellant's house in Chalfont, arriving around midnight of July 1–2, 1995. The police removed the children from appellant's house at approximately 1:00 a.m. on July 2, 1995.

A jury trial was conducted before the Honorable Cynthia M. Weaver in December of 1995. The jury found appellant guilty on three counts of rape, four counts of involuntary deviate sexual intercourse, five counts of aggravated indecent assault, nine counts of indecent assault, two counts each of endangering the welfare of children and corruption of minors, and one count each of incest, indecent exposure, statutory sexual assault and sexual assault.[1] The trial court deferred matters until a pre-sentence report could be prepared. Present counsel entered his appearance on February 5, 1996 and trial counsel withdrew from the case on February 9, 1996. On March 4, 1996, the trial court imposed an aggregate sentence of seven and one-half (7–1/2) to fifteen (15) years incarceration followed by a five (5) year term of probation. Appellant's timely notice of appeal followed.

Appellant filed a statement of matters complained of on appeal averring the following instances of ineffective representation by trial counsel: (1) failure to adequately investigate the circumstances surrounding appellant's arrest; (2) failure to call character witnesses to speak on appellant's behalf; and (3) failure to obtain the services of expert witnesses. *See* Statement of Matters Complained of on Appeal docketed 3/26/96. After copies of the trial transcripts were made available to the court and to appellant, Judge Weaver held a hearing on June 7, 1996 to determine the validity of appellant's contentions.[2] Judge Weaver has written a full opinion

1. 18 Pa.C.S.A. §§ 3121, 3123, 3125, 3126, 4304, 6301, 4302, 3127, 3122.1 and 3124.1 respectively.

2. The trial court's procedure was proper at the time Judge Weaver conducted the hearing on appellant's ineffectiveness claims. *See Commonwealth v. Wertelet*, 446 Pa.Super. 352, 355, 666 A.2d 1087, 1089 (1995) (indicating that even when no post-sentencing motion has been filed, the trial court may hold an evidentiary hearing after a defendant lodges an appeal alleging the ineffectiveness of trial counsel). The hearing in this case occurred on June 7, 1996. However, in October of that year, an *en banc* panel of the Superior Court abrogated the *Wertelet* rule in *Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551 (1996) (*en banc*). The *Pearson* court declared that once a notice of appeal has been filed, the trial court has no authority to conduct a hearing on an ineffectiveness claim "unless and until [an appellate court] remands the case with instructions to hold such a hearing." *Id.*

explaining why she concluded that prior counsel's representation was constitutionally effective.

In the instant appeal, appellant has supplemented the allegations in his Rule 1925(b) statement and now claims that trial counsel provided ineffective assistance by: (1) failing to provide character evidence; (2) neglecting to secure the assistance and testimony of an expert witness; (3) failing to request a mistrial and/or a judicial investigation when a juror was dismissed two days into the trial; (4) failing to move for suppression of all the evidence secured through an allegedly illegal search warrant; (5) failing to retain a professional private investigator; (6) failing to oppose the Commonwealth's motion to declare the child victims competent to testify; and (7) neglecting to accurately state the law of "presumed innocence" in the course of his summation. Prior to addressing the merits of these contentions, we must ascertain if appellant has preserved them for appeal purposes.

■■ Appellant did not include issues three through seven in the Rule 1925(b) statement filed in this case. The object of Rule 1925 is to facilitate appellate review by requiring the trial court to supplement the record with an opinion addressing the merits of the issues raised in the appeal. *Commonwealth v. Silver*, 499 Pa. 228, 237–38, 452 A.2d 1328, 1332–33 (1982). In the past, the Superior Court deemed issues waived whenever counsel neglected to include them in the Statement of Matters Complained of on Appeal. *Commonwealth v. Cortes*, 442 Pa.Super. 258, 260–62, 659 A.2d 573, 574–75 (1995). However, in light of recent changes to Rule of Criminal Procedure 1410, it is no longer true that the mere omission of an issue from the Rule 1925 statement automatically results in waiver. *Id.* Whenever the certified record is sufficient for the purpose, the Superior Court will now address the merits of any issue in a criminal case for which the lack of a Rule 1925(b) statement "does not prevent meaningful appellate review." *Id.* *See also Commonwealth v. Taylor*, 448 Pa.Super. 238, 245, 671 A.2d

at 328, 685 A.2d at 558. We do not in any way fault Judge Weaver for applying the law as it existed on the date of the ineffectiveness hearing.

235, 239, *appeal denied,* 546 Pa. 642, 683 A.2d 881 (1996) (waiver is not automatic under Rule 1925).

In this case, appellant elected not to present a consolidated post-sentencing motion pursuant to Rule 1410. Despite the fact that new counsel entered representation before the imposition of sentence, appellant never alleged that trial counsel was ineffective until the filing of the notice of appeal. However, this court has declined to impose any requirement that a defendant must file a post-sentencing motion in order to preserve issues concerning trial counsel's alleged ineffectiveness. *Commonwealth v. Pearson,* 454 Pa.Super. 313, 325, 685 A.2d 551, 557 (1996) (*en banc*). Thus, we do not find appellant's ineffectiveness arguments to be waived.

■ When the certified record is sufficient to permit us to review an ineffectiveness claim raised for the first time on direct appeal, we need not remand for an evidentiary hearing. *Id.* at 328, 685 A.2d at 558. Pursuant to *Commonwealth v. Wertelet,* 446 Pa.Super. 352, 666 A.2d 1087 (1995), Judge Weaver conducted a hearing concerning appellant's contentions. As discussed in footnote 2, *supra, Pearson* prohibits this type of inquiry once a notice of appeal has been filed. Nevertheless, we decline to waste judicial resources by remanding for a second ineffectiveness hearing. The proceeding was in accord with published case law when it was held, and no useful purpose would now be served by requiring the trial judge to conduct a duplicate hearing. *See also Commonwealth v. Widmer,* —— Pa. ——, 689 A.2d 211 (1997) (Superior Court should not apply a hyper-technical standard which would lead to ignoring information contained in a trial court opinion filed pursuant to Rule 1925).

We specifically note that our review of the present case has been greatly facilitated by the scrupulous analysis Judge Weaver has provided. A trial court opinion is always of enormous benefit to the appellate courts. In this case, we particularly commend Judge Weaver for her meticulous attention to detail. Largely because of the trial court's efforts, we find the certified record adequate to permit resolution of those

issues raised for the first time on appeal. We shall therefore address the merits of appellant's contentions.

We evaluate allegations of ineffectiveness of counsel under the following standard:

First, a defendant must show his claim to be of arguable merit. In the event this threshold requirement is satisfied, the defendant must next establish that defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question. Finally, the defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. In other words, that the defendant suffered actual prejudice from the act or omission.

*Commonwealth v. Rainey,* 540 Pa. 220, 228, 656 A.2d 1326, 1330 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995). If it is clear that the appellant has failed to establish "prejudice," the claim may be disposed of on that basis alone with no determination concerning the first two prongs of the foregoing standard. *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). The proper focus of this inquiry is whether counsel's conduct had an adverse effect upon the outcome of the proceeding. *Commonwealth v. Jermyn,* 533 Pa. 194, 198, 620 A.2d 1128, 1130 (1993), *cert. denied,* 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994). The Superior Court will not find "prejudice" unless we can conclude that there is a reasonable probability that the result would have been different "but for" the arguably ineffective act or omission. *Commonwealth v. Petras,* 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). *See Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d 226 (1994) (applying "but for" causation test to prejudice analysis).

Appellant first contends that trial counsel should have called witnesses to testify concerning his good character. In order to prove counsel's ineffectiveness for failure to call a witness, an appellant must present a particularized argument which demonstrates, at a minimum, the manner in which the missing testimony would have been helpful. *Commonwealth*

*v. McGill,* 545 Pa. 180, 188, 680 A.2d 1131, 1135 (1996). To this end, the appellant is required to establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of the testimony prejudiced appellant so as to deny him a fair trial. *Commonwealth v. Stanley,* 534 Pa. 297, 300, 632 A.2d 871, 872 (1993) (citing *Commonwealth v. Petras,* 368 Pa.Super. at 377, 534 A.2d at 485). It is the appellant's responsibility to show that counsel was actually aware of the witness' existence or had a duty to know of the witness. *Id.*

We are cognizant of appellant's statement that "the specific witnesses who had been prepared to testify to appellant's good character at trial but who were not asked to do so by [prior counsel] attended the 1925(b) hearing of June 7, 1996." *See* appellant's brief at 9 n. 1. This bald assertion insufficiently identifies the proposed witnesses and does not speak at all to the nature of their supposed knowledge concerning appellant's character or the way in which their testimony would have been helpful to the case. Appellant has also failed to establish that character evidence was necessary in order to secure a fair trial. Finally, appellant has not even touched upon the reasons why he believes that there is a reasonable probability that the result of the trial would have been different "but for" the missing testimony. *See Petras,* 368 Pa.Super. at 376, 534 A.2d at 485. We cannot grant relief under these circumstances.

■ Next, appellant argues that trial counsel was ineffective for failing to secure the testimony of expert witnesses to rebut the Commonwealth's medical expert. Judge Weaver addressed this claim as follows:

At trial, the Commonwealth presented testimony from Dr. David G. Marx. Dr. Marx was the emergency room physician who examined A.T. and M.T. on July 2, 1995. During cross-examination by [trial counsel], Dr. Marx conceded that although he believed a fissure existed in the vaginal area of

A.T., and that her hymen was "abnormally shaped," photographs of the area did not show such injuries.

Further expert medical testimony was not proffered by [trial counsel] as he believed Dr. Marx's testimony to be largely "neutral." Because the photographs of A.T.'s vaginal area were inconclusive and Dr. Marx's "testimony allowed the jury to conclude that the injury to [A.T.] was consistent with some other trauma," additional testimony was deemed unnecessary.

Trial Court Opinion dated July 30, 1996 at 10–11 (citations to trial exhibits and notes of testimony omitted). We agree with Judge Weaver that this claim is meritless. *See Commonwealth v. Douglas*, 537 Pa. at 597–98, 645 A.2d at 231 (counsel is to be deemed effective if any reasonable basis exists for his or her actions, which may not be measured employing a hindsight evaluation of the record).

■ Appellant's third argument focuses on the circumstances surrounding the dismissal of a juror part way through the trial. After the defense rested, the trial judge conducted a sidebar and informed trial counsel and the prosecutor that Juror No. 12 told a tipstaff that he knew the defendant, lived near the defendant, and desired to recuse because he no longer believed that he could be impartial in the case. N.T. 12/13/95 at 289. Juror No. 12 also stated that he had small children and feared retaliation from appellant. *Id.* The prosecutor immediately requested Judge Weaver to remove Juror No. 12 and seat the alternate. *Id.* at 289–90. Prior counsel agreed that this action was necessary in order to provide a fair trial to appellant. *Id.* at 290. Judge Weaver then called Juror No. 12 for questioning.

THE COURT: I asked for this special session because I was informed of concerns by juror number 12 . . . and the information I receive through my tipstaff indicated that you might have a problem being fair and impartial in rendering a verdict; is that correct?

JUROR NO. 12: (No response.)

THE COURT: You are not on trial, Mr. [K.]. We need to make sure everything is perfectly appropriate in this trial, and we can't have any doubt on the jury about whether or not you are able to make a decision because of your own personal fears.

JUROR NO. 12: Right.

THE COURT: And would it be correct that you feel that your own personal knowledge or location or whatever, is going to prevent you from making a fair decision here?

JUROR NO. 12: Yes.

THE COURT: Well, I know we went over a lot of these questions during jury selection, I won't belabor this, but I guess you didn't understand then?

JUROR NO. 12: I didn't know how important it would be. This is the first time I ever had jury duty, and I just thought it was my duty to do it. And then I started to get to thinking I had problems before, not with jury duty, but another time, and I just started worrying myself, and I don't know if I'm crying wolf right now, but I just had to say something.

THE COURT: Well, I'm going to tell you that I appreciate your candor. I would rather have known this now before you tried to deliberate than have a problem in that jury room, because both the Commonwealth and the defendant deserve to have this resolved, and it might cause a serious problem. So, I'm going to dismiss you from service on this jury and seat the alternate in your place.

JUROR NO. 12: Okay.

THE COURT: I don't want you to think, however, that you don't have an obligation to see something through.

JUROR NO. 12: No.

THE COURT: When you are chosen for a jury, you have to understand what that obligation and responsibility means before you sit here for three days listening to testimony.

JUROR NO. 12: That is the reason why I brought it up. I didn't know if I was—if I should be doing it all, but I asked the question.

THE COURT: Well, I think it's best that you did ask this question. Are both counsel in agreement?

[BY DEFENSE COUNSEL]: Yes.

[BY THE PROSECUTOR]: Yes.

THE COURT: We will then discharge Mr. [K.], juror number 12, from further service in this matter. Please do not discuss any of this with the rest of the jury, and then we will seat the alternate.

JUROR NO. 12: Thank you.

THE COURT: You can bring in the jury now.

(Short pause.)

THE COURT: Members of the jury, we have a slight scheduling problem. So, what we are going to do now, instead of having a lengthy break here, we are going to give you an early lunch, we are going to give you until 1:00 to be back here, then you can hear closing arguments from counsel and then I will charge you. It will end up in the same time period, just will be better for the court and counsel and for reasons that are not necessary for you to know.

We are now going to seat our alternate as juror number 12. So, you are a member of the jury, sir, and when you come back, you will assume that seat. Thank you, and have a good lunch.

(Whereupon the court was in recess.)

N.T. 12/13/95 at 290–94.

Appellant now claims that trial counsel rendered ineffective assistance by failing to object to the dismissal of Juror No. 12 and the seating of the alternate. In this regard, appellant argues that the "sudden disappearance" of Juror No. 12 could have led the other jurors into "unhealthy speculations having nothing to do with the real issues of the case." Appellant's brief at 14. As we have already stated, in order to demonstrate the existence of the prejudice necessary to sustain an ineffectiveness claim, appellant must show the specific manner in which counsel's conduct had an adverse effect upon the outcome of the proceeding. *Jermyn, supra.* Here, appellant

has merely advanced a vague assertion that the remaining jurors might have fretted over the dismissal of Juror No. 12 and the seating of the alternate. This is simply not enough to support the conclusion that "but for" prior counsel's handling of this matter there is a reasonable probability that the trial would have had a different outcome. We cannot find ineffective assistance in the absence of this type of prejudice. *See Petras, supra. See also Commonwealth v. Durst,* 522 Pa. 2, 4, 559 A.2d 504, 505 (1989) (appellate courts will not consider ineffectiveness claims in a factual vacuum).

■■ Appellant's fourth argument is that former counsel was ineffective for failing to seek the suppression of all evidence seized pursuant to an allegedly illegal search warrant. When an ineffectiveness claim is premised on the fact that trial counsel never moved for suppression, the appellant must first establish that there was no reasonable basis for counsel's inaction in the matter. *Commonwealth v. Arch,* 439 Pa.Super. 606, 611, 654 A.2d 1141, 1143 (1995). Second, the appellant must show that a reasonable probability exists that the verdict would have been more favorable if suppression had been granted. *Id.*

At the hearing conducted June 7, 1996, trial counsel explained that he investigated the circumstances surrounding the search warrant at issue here. N.T. 6/7/96 at 10–12. Counsel stated that he decided not to challenge the validity of the search warrant because he concluded that the evidence the Commonwealth obtained as a result of the police search was actually helpful to the defense. *Id.* at 12. Specifically, trial counsel testified that he was able to obtain a stipulation from the Commonwealth that none of the evidence found because of the search warrant connected appellant to any assaults against his daughters. *Id.* at 13. The trial court explicitly found that prior counsel properly investigated appellant's options with regard to the search warrant and developed a rational trial strategy reasonably calculated to advance his client's interests by entering into the stipulation with the Commonwealth. *See* Trial Court Opinion dated July 30, 1996 at 9. We agree with this analysis. *See Commonwealth v. Collins,* 519 Pa. 58, 65,

545 A.2d 882, 886 (1988) (counsel's decisions as to trial strategy cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives).

■ Next, appellant contends that trial counsel was ineffective in failing to retain a professional private investigator to inspect the physical circumstances of the area where A.T. alleged that she was raped, and to take pictures of this location. Appellant neglects to mention the fact that trial counsel himself twice visited this locale to familiarize himself with the scene. N.T. 6/7/96 at 33–35, 77. Counsel saw no need to take pictures of the terrain because such photographs "wouldn't make it any more or less likely that [A.T.] would have dirty clothes." *Id.* at 34.

Furthermore, trial counsel testified that the prosecutor afforded him the opportunity to inspect all of the photographs in the Commonwealth's possession, both of the crime scene and of the victim. *Id.* at 83–84. Trial counsel specifically stated that he inspected these photographs well before trial. *Id.* at 84. We note that appellant has not alleged that the Commonwealth's pictures constituted an inaccurate representation of the area or that the prosecution precluded defense counsel from using the photographs on appellant's behalf. We see no indication in the certified record that defense counsel neglected his duty to fully investigate the circumstances surrounding the crimes of which appellant was accused or that he failed to properly prepare for trial. In the absence of allegations that the prosecution entered inaccurate photographs into evidence, we cannot discern any reasonable likelihood that the outcome of appellant's trial would have been different if the pictures of the crime locale had been taken by a photographer paid by the defense rather than by the Commonwealth.

■ Appellant's sixth claim is that trial counsel was ineffective for failing to challenge the competency of the child victims. The record indicates that trial counsel and the prosecutor entered into a stipulation that both of the children

were competent to recognize the significance of their oath, knew the difference between truth and a lie, and were able to comprehend the events that would form the subject of their testimony. N.T. 12/12/95 at 21–22. Appellant now argues that trial counsel should never have entered into this stipulation agreement because A.T.'s medical records indicate that she is a hyperactive child who was taking the prescription drug Ritalin at the time of trial. It is appellant's theory that either the hyperactive condition, or a side effect of the drug, might have impacted in some unspecified manner on A.T.'s competence to testify. Appellant also notes that both children were being treated by a psychiatrist. Appellant now faults trial counsel for making no attempt "to examine any psychological reports in order to ascertain whether they contained information relevant to the question of the children's competency to testify." Appellant's Brief at 22.

We cannot grant relief on the basis of appellant's vague and unsubstantiated allegations that hyperactivity or prescription medication *might* adversely have affected A.T.'s competence to testify, or that the victims' psychological records *might* contain information that would have been helpful to the defense. In making assertions of ineffectiveness, an appellant must allege sufficient facts upon which a reviewing court can conclude that trial counsel was at least arguably ineffective. *Commonwealth v. Durst*, 522 Pa. at 4, 559 A.2d at 505. Pennsylvania law is well-settled that appellate courts cannot consider such claims in a factual vacuum. *Id.; Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).[3]

Appellant's final contention is that trial counsel rendered ineffective assistance by failing to accurately state the law of presumed innocence in the course of his final argument. He also states that this error was compounded when the

3. We note that the Commonwealth's brief avers that the competency of both child witnesses was fully explored at the preliminary hearing conducted on October 4, 1995, and that their qualification at this hearing formed the basis for the competency stipulation to which prior counsel agreed. *See* Appellee's Brief at 24–26. Unfortunately, we are unable to evaluate this assertion because it appears from the certified record that no transcript was made of the preliminary hearing.

prosecutor seized upon defense counsel's misstatement and repeated it. However, after considering the challenged remarks in their full context, we find that appellant has mischaracterized the record.

Defense counsel opened his summation in the following manner:

[By Trial Counsel]: Mr. [Prosecutor], ladies and gentlemen, I am sure you will recall that when this trial started, Judge Weaver cautioned you that the defendant doesn't have any burden of proof in this trial, he doesn't have to present evidence, and he that is that the Commonwealth has the entire burden of proof in this case before a decision is made to find this defendant guilty, that he is presumed to be innocent. Now, despite that, ladies and gentlemen, the defendant has offered evidence at this trial. Think about it for a moment, what a daunting task the defense has. *First of all, ladies and gentlemen, when the defense decides to offer evidence in a case like this, it has to prove a negative, that something didn't happen.* But that isn't the greatest difficulty that is facing the defense. The greatest difficulty sits in the front row of the courtroom, the witnesses against the defendant, the complainants in this case. Ladies and gentlemen, they are two small, cute, normal little girls for all appearances, and as they walked into this courtroom you knew what the charges were against the defendant, charges that we would have to say are unspeakable charges, and when you see two such children walk in on their way up to the witness stand, because we are adults and because we are human, our hearts, I'm sure your hearts, everyone in the courtroom, their heart went out to them without having heard a word of evidence against the defendant. All of you knew at that time what he was charged with. I'm willing to bet that in every mind in this courtroom there was a thought that he must be guilty before any evidence had come in based upon who they are.

Now, ladies and gentlemen, that isn't to be critical, it's just human nature. Adults want to protect children from awful things. Adults don't want to see children have to

come into a courtroom and face the prospect of being cross-examined and have to sit in front of twelve strangers and a judge and describe these circumstances. It's for that very reason, ladies and gentlemen, that I have to ask you in this case to try to step beyond your hearts as you are deliberating, to give [defendant's wife], her mother, and my arguments the same benefit that you give to these two little girls. Because of who they are, ladies and gentlemen, not because of the law—don't misunderstand what I'm saying— but because of who they are it seems that they have a leg up before this even begins. So, what we are looking for is a balanced playing field, we are asking that you decide this case a little bit more coldly, a little bit more dispassionate[ly] than you otherwise might, . . . .

N.T. 12/13/95 (Transcript of Closing Arguments) at 2–4 (emphasis added as to challenged remarks).

We cannot agree with appellant's contention that prior counsel incorrectly stated the law regarding the presumption of innocence. Rather, the summation represented an appropriate attempt by trial counsel to focus the jury's attention on the difficulty of "proving a negative." Furthermore, the concentration point of trial counsel's remarks centered on the normal human desire to sympathize with small children and protect them. In this context, counsel's remarks clearly constituted an exhortation to remember the presumption of innocence and to evaluate the evidence dispassionately. We see no reasonable likelihood that counsel's summation prejudiced appellant in the sense that "but for" the challenged remarks the outcome of the trial would have been different.

Appellant also contends that prior counsel was ineffective for failing to object to a portion of the prosecutor's closing. A new trial will not be granted on the grounds of a prosecutor's summation "unless it is inevitable that the prosecutor's remarks prejudiced the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Christy*, 540 Pa. 192, 209, 656 A.2d 877, 885, *cert. denied*, —— U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130

(1995). In this case, the prosecutor made the following comment:

[By the Prosecutor]: [Defense counsel] talked about the presumption of innocence both in his opening address and his closing address, but remember one thing, ladies and gentlemen, that the presumption of innocence exists, and it is a presumption for the innocent and is not a shield for the guilty to hide behind.

N.T. 12/13/95 at 24 (Transcript of Closing Arguments). Even if we were to assume, purely for the sake of argument, that this comment exceeded the bounds of permissible oratorical flair, we still could not grant relief.

The record shows that after defense counsel and the prosecutor concluded their summations, the trial court fully and correctly charged the jury concerning the presumption of innocence.

THE COURT: Members of the jury, a fundamental principle of our system of criminal law is that the defendant is presumed to be innocent. The mere fact that he was arrested and is accused of crimes is not any evidence against him. Furthermore, the defendant is presumed innocent throughout the trial ... unless and until you conclude, based on careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt.

It is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt. A person accused of a crime is not required to present evidence or prove anything in his own defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty.

N.T. 12/13/95 a 296–97. Our law presumes that a jury will follow the trial court's instructions. *Commonwealth v. Gibson*, —— Pa. ——, ——, 688 A.2d 1152, 1164 (1997 ) (citing *Commonwealth v. Johnson*, 542 Pa. 384, 402–03, 668 A.2d 97,

106 (1995)). In light of the trial judge's accurate and comprehensive jury charge, we are unable to perceive that the prosecutor's remarks could possibly have created the type of hostility and bias that would have prevented the jury from properly weighing the evidence and reaching a true verdict. *See Christy, supra.* Because appellant was not deprived of a fair trial on this basis, we cannot conclude that prior counsel was ineffective for failing to object to the prosecutor's statement. *See Commonwealth v. Rompilla,* 539 Pa. 499, 510, 653 A.2d 626, 631 (1995) (counsel can never be considered ineffective for failing to raise a meritless claim).

Judgment of sentence affirmed.