J-S06020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37-**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN BERRY | : | |
| | : | |
| Appellant | : | No. 2978 EDA 2017 |

Appeal from the PCRA Order September 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012466-2009

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 02, 2019**

Appellant, Steven Berry, appeals from the September 8, 2017 Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

A prior panel of this Court set forth the facts of this case as follows:

> In the late evening of May 12, 2009, Appellant[] and three cohorts [] approached Carlot Noisette, who had just parked his car on a Philadelphia street.  As Mr. Noisette exited the car, [Appellant] and the others surrounded him; one of them pointed what appeared to be a handgun, but in fact was not a firearm,[] at Mr. Noisette's head, and demanded that he turn over his wallet and phone.  Mr. Noisette indicated that he had no money, and [Appellant] snatched and broke his phone. The four then fled, pausing across the street to attempt to rob a woman entering her car.

*See Commonwealth v. Berry*, No. 2320 EDA 2010 at 2-3 (Pa. Super. filed January 4, 2012) (unpublished memorandum).

Following a two-day trial, on March 10, 2010, a jury convicted Appellant of Robbery, Conspiracy to Commit Robbery, and Simple Assault.[1]

On July 12, 2010, the trial court sentenced Appellant to consecutive terms of three to six years' incarceration for his Robbery and Conspiracy convictions. The court imposed no sentence for Appellant's Simple Assault conviction.

Appellant did not file a Post-Sentence Motion, but timely filed a direct appeal from his Judgment of Sentence, in which he challenged, *inter alia*, the sufficiency of the evidence, the admission of various testimony, and the legality of the victim's identification of him at the time of apprehension. On January 4, 2012, this Court affirmed Appellant's Judgment of Sentence. **See Berry**, **supra**.

On December 26, 2012, Appellant filed *pro se* the instant PCRA Petition, his first. In his Petition, Appellant claimed his trial counsel had been ineffective in numerous ways, including by not requesting a suppression hearing. Petition, 12/26/12, at 3. On March 10, 2016, the PCRA court appointed counsel, who, on February 10, 2017, filed an Amended PCRA Petition.[2] In his Amended Petition, Appellant claimed, *inter alia*, that his trial and appellate counsel were ineffective for failing to request a lineup or file a motion to suppress the identification of him as the perpetrator and for failing

---

[1] 18 P.A.C.S. §§ 3701(a)(1)(ii); 903(a); and 2701(a)(3), respectively.

[2] Nothing in the record explains the more than four-year delay between Appellant filing his *pro se* Petition and his counselled Amended Petition.

to raise on appeal a claim that the trial court had erred in instructing the jury that it could construe Appellant's flight as demonstrative of consciousness of guilt.  Amended Petition, 2/10/17, at 2 (unpaginated).

On June 1, 2017, the Commonwealth filed a Motion to Dismiss Appellant's PCRA Petition as meritless.

On July 6, 2017, the PCRA court notified Appellant of its intent to dismiss his Petition without a hearing pursuant to Pa.R.Crim.P. 907 as without merit. Appellant did not file a response to the court's Rule 907 Notice.

On September 8, 2017, the PCRA court dismissed Appellant's Petition. This timely appeal followed.  Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Was trial counsel ineffective for failing to request a line up or filing a [M]otion to [S]uppress [I]dentification?

2. Was appellate counsel ineffective for failing to raise on appeal the issue of whether the lower court's jury instruction relating to whether they could consider flight as being consciousness of guilt?

Appellant's Brief at 8 (verbatim).

Appellant challenges the effectiveness of his trial and direct appeal counsel.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error."  ***Commonwealth v. Root***, 179 A.3d 511, 515-16 (Pa. Super. 2018) (citation omitted).  This Court grants

great deference to the findings of the PCRA court if they are supported by the record. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012).

"It is well-established that counsel is presumed to have provided effective representation[.]" **Commonwealth v. Franklin**, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted). To overcome the presumption, the defendant has to satisfy the performance and prejudice test set forth in **Strickland v. Washington**, 466 U.S. 668 (1984). The Pennsylvania Supreme Court has applied the **Strickland** test by examining three elements: specifically, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. **Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012). If a claim fails under any necessary element of the **Strickland** test, the court may proceed to that element first. **Id.** at 1196. "Counsel will not be deemed ineffective for failing to raise a meritless claim." **Commonwealth v. Jones**, 912 A.2d 268, 278 (Pa. 2006) (citation omitted).

In his first issue, Appellant claims that his trial counsel was ineffective for failing to request a line up or to file a Motion to Suppress his identification where the circumstances of the complainant's identification of Appellant—once

when Appellant was in police custody and once in court—were unduly suggestive and the flash that police received was inaccurate.[3] Appellant's Brief at 14-15.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned Opinion of the Honorable Susan I. Schulman, we conclude Appellant's claim that his trial counsel was ineffective merits no relief. *See* PCRA Ct. Op., 3/16/18, at 6-9 (explaining that: (1) any motion to suppress the victim's identification of Appellant would have been meritless because the victim identified Appellant as the perpetrator "unequivocally and unhesitatingly" within 15 minutes of the robbery, and (2) trial counsel was not ineffective for not requesting a lineup because "[t]he victim's face to face encounter with Appellant, together with his immediate and unequivocal identification, establishes an independent basis for the victim's in-court, certain identification of Appellant as one of the assailants) (emphasis omitted)). We, thus, affirm on the basis of the PCRA court's March 16, 2018 Opinion.

In his second issue, Appellant claims his appellate counsel was ineffective for failing to raise a challenge to the trial court's jury instruction that Appellant's flight demonstrated consciousness of guilt. Appellant's Brief

_____

[3] In particular, Appellant complains that the police received a flash for four black juvenile males in dark hoodies, but Appellant was not a juvenile, was not wearing a hoodie, and had a full beard.

at 15-16. He argues that the Commonwealth did not introduce evidence of flight at trial, thus rendering this instruction improper and unfounded. *Id.* He notes that his trial counsel properly objected to the charge but claims his appellate counsel was ineffective for not litigating this issue in his direct appeal. *Id.* at 16.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned Opinion of the Honorable Susan I. Schulman, we conclude Appellant's claim that his appellate counsel was ineffective merits no relief. *See* PCRA Ct. Op. at 10-12 (explaining that: (1) the appellate counsel's failure to litigate this claim on appeal had a reasonable basis because trial court's flight instruction was rooted in the Commonwealth's evidence of Appellant's flight, and, thus, was proper; and (2) even if the instruction was improper, Appellant failed to establish actual prejudice). We, thus, affirm on the basis of the PCRA court's March 16, 2018 Opinion.

Order affirmed. The parties are directed to append a copy of the PCRA court's March 16, 2018 Opinion to any future filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/19

- 6 -

Circulated 03/20/2019 10:57 AM

**RECEIVED**

MAR **19** 2018

PCRA Unit
CP Criminal Listings

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0012466-2009

               VS.                 :

                               :      2978 EDA 2017

STEVEN BERRY                   :

**FILED**

MAR **16** 2018

Office of Judicial Records
Appeals/Post Trial

OPINION

SCHULMAN, S.I., J.

Steven Berry ("Appellant") appeals this Court's Order dismissing his petition under the Post-Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546 ("PCRA"). This Court submits the following Opinion pursuant to Pa. R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

## PROCEDURAL BACKGROUND

On March 10, 2010, a jury convicted Appellant of robbery (18 Pa. C.S. § 3701(a)(1)(ii)), conspiracy to commit robbery (18 Pa. C.S. § 903(a)(1)), and simple assault (18 Pa. C.S. 2701(a)(3)). On July 12, 2010, this Court sentenced Appellant to consecutive terms of three (3) to six (6) years' incarceration on both the robbery and conspiracy convictions. This Court imposed no sentence on the simple assault conviction.[1]

Appellant filed a direct appeal, and on January 4, 2012, the Superior Court affirmed the jury's verdicts and this Court's sentence. (No. 2320 EDA 2010). On December 26, 2012, Appellant filed a *pro se* PCRA petition. On February 10, 2017, Appellant's court-appointed counsel filed an amended PCRA petition. On June 1, 2017, the Commonwealth filed a motion to

---

[1] At the sentencing hearing, Appellant pleaded guilty to a separate and unrelated robbery charge, for which this Court sentenced him to three (3) to six (6) years' incarceration, followed by three (3) years' probation.

CP-51-CR-0012466-2009 Comm. v. Berry, Steven
Opinion

1



8084066261

dismiss Appellant's petition, and on September 8, 2017, this Court entered an order dismissing Appellant's petition.

On September 14, 2017, Appellant filed a notice of appeal to the Superior Court, and on October 14, 2017, Appellant filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

## RELEVANT FACTUAL HISTORY

This Court summarized the facts of this case in its Rule 1925(a) opinion filed on May 9, 2011, which states in relevant part that:

> At trial, the Commonwealth presented the testimony of the victim, Carlot Noisette ("Mr. Noisette"). On May 12, 2009, at approximately 11:30 p.m., Mr. Noisette parked his vehicle on Chelten Avenue, in the city and county of Philadelphia, Pennsylvania, where he lived with his wife and children.[2] He was returning home from work.
>
> While talking on his cell phone, Mr. Noisette exited his vehicle and observed "four guys coming right in front of [him]." These "guys" formed a circle around him, and one of them pulled out a gun, "put it to [his] head," and demanded his phone and wallet.[3] Mr. Noisette replied that he had no money, following which one of the males – who[m] Mr. Noisette later identified as Appellant – ripped a portion of his phone from his ear. At this point, a vehicle approached and the four assailants fled across the street, where they assaulted and attempted to rob a female individual who was attempting to enter her vehicle. Mr. Noisette, in the meantime, ran inside his home and directed a family member to call the police.
>
> "About ten minutes" later, multiple police units arrived in the vicinity and apprehended all four of the assailants. The police first caught the gunman, and then apprehended Appellant and the two other assailants about four (4) blocks from Mr. Noisette's residence. Mr. Noisette subsequently identified these individuals as the four males who robbed him, explaining that Appellant had "grabbed the phone from [him]" while Appellant's accomplice "had a gun to [his] head."

---

[2] Mr. Noisette emigrated from Haiti in 2005. He explained at trial that although he can understand and speak some English, he cannot clearly express himself in this language. He therefore testified through an interpreter.

[3] Mr. Noisette testified that he feared for his life, and was "pray[ing] to God because [he] thought they would shoot [him]."

2

Several Philadelphia Police Officers also testified. Officer Harvey Davis, who was off-duty at the time of the robbery, heard a woman on the 200 block of West Colonial Street "screaming" that she was "being robbed." The officer "hollered 'police, stop,'" and "noticed four males holding the lady down and then ... take off running." Three of the assailants ran "toward Chelten Avenue" while the other male fled alone "toward 64[th] [Street]." Officer Davis chased the lone suspect and caught him after a "short foot chase." By this time, on-duty police officers had responded to the scene, patted down this suspect, and recovered from his pocket a .38 caliber *replica* handgun.[4] Officer Davis advised these officers that he saw three other males flee down Chelten Avenue.

Officer Michael Bucchieri testified that he and his partner were among the on-duty officers who responded to a radio call regarding the robbery on Chelten Avenue. The "flash" information advised of a "point of handgun" robbery involving "four black males, approximately 16 to 17 years-old, in dark clothing." Upon arriving in the vicinity, the officers observed "a juvenile running down the street, being chased by [Officer Davis]." The individual matched the suspects' description, and Officer Bucchieri therefore exited his patrol car and pursued him on foot with Officer Davis. After the officers apprehended this individual ... they placed him in handcuffs and recovered a "black toy handgun" from his left pocket. The officers also recovered car keys ... belong[ing] to the female ... assaulted on West Colonia Street.

When Mr. Noisette was brought to where [this individual] was in custody, he identified [him] – without any hesitation – as the person who "put the gun to [his] head" during the robbery.

Officer Mark Johnson and his partner also responded within minutes of the radio call. He was advised by Officer Bucchieri that one suspect was in custody, and to be on the lookout for "three other black males wearing dark clothing, last seen westbound on Chelten Avenue." Officer Johnson therefore proceeded westbound to where Chelten Avenue intersects with the 6200 block of Lawrence Street, and in this vicinity he stopped "three black males wearing dark clothing." Mr. Noisette was brought to this location, upon which he positively identified these males – including Appellant – as the other three participants in the robbery.

Officers David Bryzyski and Carmen Leva as well responded to the 6200 block of Lawrence Street, where they assisted Officer Johnson in apprehending the three male suspects.... The officers learned that [the suspects] ... all resided at 2036 West Venango Street, in the city and county of Philadelphia, which is approximately four (4) or (5) miles from where the robbery occurred.... Officers Bryzyski and Leva testified that Mr. Noisette identified the three males as the individuals who robbed him.

---

[4] The replica gun was submitted into evidence as Exhibit "C-5." Officer Davis explained that the gun was "not a real gun" but was "made to look like a real gun."

At the conclusion of trial, the jury found Appellant guilty of Robbery, Conspiracy to Commit Robbery, and Simple Assault.

See Trial Court Opinion, 11/12/12 (citations to the record and emphasis omitted here).[5]

## ISSUES RAISED ON APPEAL

Appellant raises the following issues on appeal:

"1.    The Court erred in failing to grant PCRA relief to the Appellant for the following reasons:

(1) In this matter, the identification of the ... Appellant was inaccurate for the reasons outlined in the memorandum of law attached to the Amended PCRA Petition, which is incorporated herein.

(2) Trial counsel failed to request a line up or file a motion to suppress the identification.

(3) The Appellant was denied his rights to due process and effective counsel, under the laws and Constitutions of the United States and Pennsylvania, as the Appellant's counsel was ineffective for failing to request a line up or file a motion to suppress the identification.

(4) The lower court erred in instructing the jury that flight could be considered to demonstrate consciousness of guilt for the reasons outlined in the attached memorandum of law which is incorporated herein.
(5) Trial counsel properly objected at trial but appellate counsel failed to raise the issue on appeal.

(6) The Appellant was denied his rights to due process and effective counsel, under the laws and Constitutions of the United States and Pennsylvania, as the Appellant's counsel was ineffective for failing to raise the issue of the Court's faulty jury instruction on appeal.

2.    The Court erred in failing to grant an evidentiary hearing in this matter as requested in the Amended PCRA Petition."

## DISCUSSION

This Court will address Appellant's claims in the order raised above.

---

[5] Appellant was 19 years' old at the time of the robbery and his three cohorts were 16, 16, and 14 years' old.

4

**1.     Whether "the identification of the ... Appellant was inaccurate for the reasons outlined in the memorandum of law attached to the Amended PCRA Petition[.]"**

Appellant's claim of error has been previously litigated and therefore no relief is available. "To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence ... [t]hat the allegation of error has not been previously litigated or waived." See 42 Pa. C.S. § 9543(a)(3). "[A]n issue has been previously litigated if ... the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" See 42 Pa. C.S. § 9544(a)(2).

Appellant argued in his PCRA memorandum of law that his identification was "inaccurate" and "unduly suggestive." Appellant had raised the same claim on direct appeal when he argued that his "conviction ... resulted from uncorroborated and illegally suggestive misidentification of Appellant, as his appearance at time of arrest (beard) was wholly contrary to the victim's description to the police (4 kids / juveniles) and the court abused its discretion by allowing the conviction to stand and Denying Appellant's Post-Trial and Post-Sentence Motions addressing these above issues without a hearing." Because Appellant previously litigated the validity of his identification before the Trial and Superior Courts, which both rejected Appellant's argument, he is not eligible for collateral relief on this ground. See e.g., Commonwealth v. Tucker, 394 A.2d 1043, 1044-1055 (Pa. Super. 1978); Commonwealth v. Hook, 446 A.2d 290, 291 (Pa. Super. 1992).

In any event, for the reasons below, Appellant's challenge to his identification is a meritless claim.

5

**2-3.  Whether trial counsel rendered ineffective assistance by "failing to request a line up or file a motion to suppress the identification."**

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012). "[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Spotz, 624 Pa. 4, 33 (Pa. 2014). "[T]o prove counsel ineffective, Appellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) Appellant was prejudiced by counsel's act or omission." Id. "If a petitioner fails to prove any of these prongs, his claim fails." Id. Moreover, "it is well-settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ... test, the court may proceed to that element first." Koehler, 36 A.3d 121, 132.

"When an ineffectiveness claim is premised on the fact that trial counsel never moved for suppression, the appellant must first establish that there was no reasonable basis for counsel's inaction in the matter." Commonwealth v. Ervin, 691 A.2d 966, 973 (Pa. Super. 1997) (citing Commonwealth v. Arch, 654 A.2d 1141, 1143 (1995)). "Second, the appellant must show that a reasonable probability exists that the verdict would have been more favorable if suppression had been granted." Id.

6

In this case, any motion to suppress the victim's identification of Appellant would have been meritless, and trial counsel cannot be deemed ineffective for failing to file a meritless suppression motion. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." Commonwealth v. Bruce, 717 A.2d 1033, 1036-1037 (Pa. Super. 1998) (citations omitted here). "The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant admission, even though the confrontation procedure may have been suggestive." Id. "Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion." Id. "A pretrial identification will not be suppressed as violative of due process unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." Id. "[W]here a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted." Commonwealth v. Sanders, 42 A.3d 325, 330 (Pa. Super. 330).

Furthermore, "[t]he purpose of a 'one on one' identification is to enhance reliability by reducing the time elapsed after the commission of the crime." Commonwealth v. Meachum, 711 A.2d 1029, 1034 (Pa. Super. 1998). "In determining whether a particular identification was reliable, the suppression court should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Bruce, 717 A.2d 1033, 1037. "The corrupting effect of the suggestive identification, if any, must be weighed against these factors." Meachum, 711 A.2d 1029, 1034. "Absent some special element of unfairness, a prompt 'one on one'

7

identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." Id.

Here, the police apprehended Appellant and his three accomplices within fifteen (15) minutes of the robbery, and the victim was promptly brought to Appellant's location. The victim identified Appellant, **unequivocally and unhesitatingly**, as the person who grabbed his phone while Appellant's accomplice stuck a gun to his head. (N.T., 3/9/10 at pgs. 118, 125, 150-151; N.T., 3/10/10 at pgs. 20, 41, 58-59, 68-69). Multiple police officers testified to the victim's immediate and unequivocal identification of Appellant. (N.T., 3/9/10 at pg. 150; N.T., 3/10/10 at pgs. 41-42, 58).[6] The victim's identification was prompt, certain, and detailed, and contained no element of suggestiveness as to create "an irreparable likelihood of misidentification." Quoting Meachum, supra. Appellant's ineffectiveness claim is therefore meritless, since his counsel cannot be faulted for failing to file a meritless motion.

Nor can trial counsel's purported "failure" to request a lineup sustain an ineffectiveness claim. "[C]ounsel's failure to request a lineup ... is not per se ineffective assistance." Commonwealth v. Edwards, 762 A.2d 382, 390-391 (Pa. Super. 2000) (citations omitted here). When confronted with an ineffectiveness claim based on failing to request a lineup, courts "assess[] whether the totality of the circumstances support an independent basis for identification of a defendant" as the perpetrator of the crime. Id. "The most important factor in the totality of the circumstances test is the opportunity of the witness to view the suspect at the time of the

---

[6] Multiple police officers also identified Appellant as one of the males matching the "flash" information. The victim did not call the police; he rather directed a family member to make the call. The "flash" information described the suspects as "four black males wearing dark hoodies and jackets," ages 16-17 years' old. Appellant, age 19 and bearded, wore a dark jacket when he was arrested, and the two males with whom Appellant was arrested wore dark "hoodies." (N.T., 3/9/10 at pgs. 107-112; N.T., 3/10/10 at pgs. 3-16, 35-48, 55-56).

8

crime." Id. "This would seem to be particularly so when the witness was the victim, for ...

[w]henever the victim of a crime has an opportunity to observe the criminal, the impression of

the face of an assailant is etched upon the prey by the terror of the occasion." Id.

The victim's testimony easily demonstrates that he had an independent basis – *i.e.*, one

excluding a lineup – for identifying Appellant as one of the perpetrators of the robbery. The

victim observed Appellant at close range during the robbery and identified him to police officers

less than 15 minutes later. The victim had zero hesitation in identifying Appellant as the

perpetrator who grabbed his phone. The victim's face-to-face encounter with Appellant, together

with his immediate and unequivocal identification, establishes an independent basis for the

victim's in-court, certain identification of Appellant as one of the assailants.

4.    **Whether this Court "erred in instructing the jury that flight could be considered to demonstrate consciousness of guilt[.]"**

As phrased by Appellant, this argument is waived for purposes of collateral relief. "[A]n

issue is waived [under the PCRA] if the petitioner could have raised it but failed to do so before

trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." See

42 Pa. C.S. § 9544(b). To the extent Appellant raises a substantive challenge to his conviction

based on this Court's jury charge, the challenge has been waived because Appellant failed to

raise it on direct appeal. See e.g., Commonwealth v. Hanible, 612 Pa. 183, 215 at fn. 14 (Pa.

2011) (holding that "a substantive challenge to Appellant's conviction based on the

inadmissibility of [an alleged hearsay] statement ... [was] waived as it was not raised on direct

appeal.").

9

**5-6.** Whether Appellant's counsel "was ineffective for failing to raise the issue of the Court's faulty jury instruction on appeal."

Appellant's ineffectiveness claim is meritless. "A jury instruction is proper if supported by the evidence of record." Commonwealth v. Clark, 961 A.2d 80, 92 (Pa. 2008). "[W]here evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt." Commonwealth v. Johnson, 576 Pa. 23, 53 (Pa. 2003). "A defendant's knowledge may be inferred from the circumstances attendant his flight." Id. Furthermore, "[e]vidence of flight ... can be established through eyewitness testimony." Commonwealth v. Hudson, 955 A.2d 1031, 1036 (Pa. Super. 2008). "The theory for admitting evidence of flight is based upon a premise that a person who flees does so in recognition of his wrongdoing and is seeking to avoid punishment for that conduct." Commonwealth v. Barnes, 593 A.2d 868, 870 (Pa. Super. 1991) (citations omitted).

Here, the testimony established that "four guys" surrounded the victim as he exited his vehicle upon returning home from work. One of the males "put a gun to [the victim's] head" and demanded his phone and wallet. The victim replied that he had no money, upon which Appellant robbed him by ripping away a portion of his phone. When a vehicle approached, Appellant and his accomplices ran across the street and assaulted a female attempting to enter her vehicle. Philadelphia Police Officer Harvey Davis then arrived on the scene and heard a woman "screaming" that she was "being robbed." **Officer Davis "hollered 'police, stop,'" upon which he observed the males then "take off running."** (N.T., 3/9/10 at pgs. 107-112, 138-156).

The above testimony clearly supported that Appellant had fled the scene after robbing the victim and assaulting another individual, and after a police officer hollered "police, stop." This Court's flight instruction was therefore rooted in the evidence and properly provided, and

10

Appellant's counsel cannot be deemed ineffective for failing to challenge the instruction on appeal.

Furthermore, even if the instruction was improper under the circumstances, Appellant does not establish actual prejudice. "A defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice: that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." Commonwealth v. Charleston, 94 A.3d 1012, 1019-1020 (Pa. Super. 2014) (quoting Commonwealth v. Spotz, 84 A.3d 294, 315 (2014)). "This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action." Id. "The harmless error standard ... states that whenever there is a 'reasonable possibility' that an error might have contributed to the conviction, the error is not harmless." Id. "This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the ... prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings." Id. "This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel." Id. "In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel." Id. "Unsupported speculation does not establish [a] reasonable probability" that counsel's ineffectiveness could have reasonably had an adverse effect on the outcome of the trial. Id. at 1026.

11

The victim testified that he had a close, direct encounter with Appellant when the latter robbed him. Only minutes later the victim identified Appellant, with certainty and without hesitation, as the perpetrator who grabbed his phone. The victim again identified Appellant at trial, testifying with certainty that Appellant grabbed his phone while Appellant's accomplice stuck a gun to his head. (N.T., 3/10/10 at pgs. 44-46, 57-60, 65-69). Since the testimonial evidence weighed decisively in favor of the guilty verdicts, Appellant cannot establish that the jury convicted him "when it would not otherwise have done so" absent the flight instruction. Clark, 961 A.2d 80, 92 (citations omitted here).

Appellant thus cannot establish "prejudice" under the ineffectiveness of counsel test, and his PCRA claim would fail even if this Court's instruction was improper. Id.

## CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's Order dismissing Appellant's PCRA Petition should be affirmed.

BY THE COURT:

DATE: 3/16/18

SUSAN I. SCHULMAN, J.

12

## PROOF OF SERVICE

I, Darece Williford, secretary to Honorable Susan I. Schulman, hereby certify that I

served, on March 19, 2018 by first-class mail, postage prepaid, a true and correct copy of

the foregoing Opinion on the following:

J. Matthew Wolfe, Esquire
4256 Regent Square
Philadelphia, PA 19104

Hugh Burns, ADA
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Darece Williford